## Mary V. Randall & others *vs.* Abigail Sanderson & others.

A title adverse to the owner of a house may be acquired by prescription in a strip of land adjacent thereto, although the eaves of the house project and discharge water over the strip.

The eight co-tenants of two adjoining lots of land conveyed the first lot to A. by a deed containing covenants of warranty and against incumbrances ; six of them executed a deed of their interest in the second lot to the other two co-tenants ; and both deeds were on the same days respectively dated, acknowledged and recorded. On the second lot was a house with three windows, each the sole means of lighting the room in which it was placed, opening on the first lot. *Held,* that there was no easement of light and air for these windows over the first lot.

BILL IN EQUITY, filed March 11, 1871, by the widow and heirs of William Randall, against Abigail Sanderson and her lessees, to restrain them from shutting up certain windows in the plaintiff's house, and cutting off the gutters and eaves thereof. Hearing before *Gray*, J., who made a report of the case, of which the following is the material part :

" The parties claimed title to adjoining estates on Pleasant Street, in Boston, under Lemuel Packard, Jr., who died in 1822, six of whose heirs on April 1, 1824, made a deed to Arza Packard and David Packard, the two remaining heirs, of ' a certain lot of land situate in Pleasant Street, in the southerly part of Boston aforesaid, and bounded as follows, viz. : Northwesterly on land lately of Ephraim Marsh, there measuring one hundred and seventy feet; northeasterly on said street, there measuring forty-two feet; southeasterly by land formerly of Christopher Minot, there measuring one hundred and sixty-five feet; and southwesterly and southeasterly upon the sea or flats, there measuring forty-two feet more or less, or however otherwise butted or bounded, with all the buildings standing thereon, and with all the flats below said lot, and all rights and privileges thereto belonging.' " This deed was acknowledged April 21, 1824, before John Rand, justice of the peace, and was recorded the next day.

" On the same day, the eight heirs of Lemuel Packard, Jr., made a deed to Samuel Sprague, of ' a certain lot of land situate in Pleasant Street, in said Boston, bounded northerly on Pleasant Street, there measuring forty-two feet; easterly on land now or late of Lemuel Packard, Jr., there measuring eighty-eight feet; southerly on land now or late of Ephraim Marsh, there measuring thirty-seven feet; and westerly on a passageway eighteen feet in width, which said Marsh, in his deed to John Thomas, Jr., dated August 12, 1813, covenants shall always be kept open. Also the dwelling-house and all other buildings standing on said land, and the privilege of passing up and down said passageway forever, and all other privileges and appurtenances to said land belonging.' " This deed contained covenants of warranty and against incumbrances, was acknowledged April 21, 1824, before John Rand, justice of the peace, and was recorded the next day.

" A part of the land so conveyed to Arza Packard and David Packard was, on March 1, 1825, conveyed by them by like description, except in making the northwesterly boundary 77½ feet, and the southeasterly boundary 82½ feet, to Jabez Allen, who in 1827 conveyed by a substantially similar description, to William Randall, the husband and father of the plaintiffs. Lemuel Packard, Jr., acquired title to this land in 1805."

" Sprague in 1835 conveyed to Luther Sanderson, the devisor of the defendant, Abigail Sanderson, ' a certain piece or parcel of land situate on Pleasant Street, in said Boston, and bounded northerly on said Pleasant Street, and there measuring about forty-two feet; easterly on land now or late of Lemuel Packard, Jr., about sixty-five feet; southerly on land conveyed by said Sprague to Benjamin Bosworth, there measuring about thirty-eight feet; and westerly on a passageway which Ephraim Marsh, by deed dated August 12, 1813, covenants with one John Thomas, Jr., shall always be kept open, now called Fayette Street, and measuring on said Fayette Street about sixty-five feet, be the said admeasurements more or less, together with the brick dwelling-house and all other buildings thereon standing, with all the privileges and appurtenances thereto belonging; being a part of the same premises which said Sprague purchased of the heirs of Lemuel Packard, Jr., deceased, April 1, 1824.' Lemuel Packard, Jr., acquired title to this land in 1818.

" All these deeds contained full covenants of warranty, and were duly recorded.

" Upon the plaintiffs' estate is a wooden dwelling-house, built before 1805, three stories high, and about twenty feet wide, the northwestern wall of which begins at a point on Pleasant Street, $40\frac{82}{100}$ feet from the eastern corner of the lot, and extends backwards at nearly a right angle from the street, $40\frac{21}{100}$ feet. About 1809, Lemuel Packard, Jr., built a brick house on the rear of this lot, the northwestern wall of which was $1\frac{10}{100}$ feet farther toward the northwest than the corresponding line of the wooden house.

" About 1804, a three-story brick house was built, with its southeasterly wall adjoining the northwesterly wall of the plain-

tiffs' wooden dwelling-house, and extending $19\frac{25}{100}$ feet back from Pleasant Street, and its northeasterly wall extending $41\frac{83}{100}$ feet along Pleasant Street ; on the westerly end of this house is Fayette Street, beyond the base or wall line ; and the house stands at an angle and not in a parallel line with that street, and has a door of entrance on that street. The sidewalk of Fayette Street comes up to the northwesterly end of this house ; and the northeasterly and northwesterly boundaries of the lot, if produced in straight lines, would intersect at a point $1\frac{28}{100}$ feet beyond. There was no other evidence of the true boundary of the lot, or of Fayette Street at this corner. The southeasterly wall of this brick house is not a party wall, and is no part of the wall of the plaintiffs' house. At or soon after the time of building this house, the owner built a shed in the rear one story high, extending backwards on a line with the southeasterly wall of his house to the end of the plaintiffs' wooden house. This shed has always been plastered and papered inside, against the wall of the plaintiffs' wooden house, and the timbers of the floor of this shed were supported by the brick wall forming the foundation of this house. This brick house and shed have continued in the same condition ever since their erection. The defendants offered no further evidence of the claim of title made by themselves or their grantors.

" The plaintiffs' wooden dwelling-house originally had a roof sloping each way, and a gutter all around the eaves, extending outwards about a foot and a half. In 1847, William Randall put an additional roof over this house, so constructed as to throw much of the water, which had previously flowed off on the southwest side, towards the northwest ; and this new roof projected over and beyond the gutter about three inches, from Pleasant Street to the rear line of the defendant's brick house, leaving the rest of the gutter on that side of the plaintiffs' wooden house as it had always been. William Randall and the plaintiffs have occupied this house ever since he finished it, and have always claimed the right to have the water flow off by the eaves and gutter on that side, and have always claimed their northwesterly line to be without or in the outer edge of the gutter or projection, and in a straight line through its whole length.

" The plaintiffs' wooden house has always had three windows, one over the other, which are the only means of lighting the rooms in which they are placed, looking toward the northwest, over the lands now owned and occupied by the defendants.

" The defendants are about erecting a high brick building where their brick house and shed have stood, extending the whole depth of the plaintiffs' wooden dwelling-house, and almost or quite close to it, which, if carried directly upwards, will wholly obstruct the light of these windows, and cut off some part of the plaintiffs' gutter and eaves.

" Upon these facts I was of opinion and decreed, that the plaintiffs did not own any part of the land covered by the southeasterly wall of the defendants' brick house, or of the land in the rear thereof, lying northwesterly of the northwesterly wall of the plaintiffs' wooden house ; and were not entitled to any right of light or air over the defendants' land, nor to an injunction against stopping up the windows ; but that the plaintiffs were entitled, by an adverse use of more than twenty years, to have the gutter and eaves of their wooden house remain as they now exist, and thereby to carry off and discharge the water from the roof ; that the defendants should be enjoined against cutting off the plaintiffs' gutter and eaves, or interfering with such discharge of water ; and that the case should be referred to a master, to ascertain and report to what extent the building now being erected by the defendants would infringe the plaintiffs' rights in these respects, and in what mode it should be constructed to secure those rights. The plaintiffs appealed from this decree."

*A. A. Ranney & W. E. L. Dillaway*, for the plaintiffs.

*C. A. Welch*, for the defendants.

MORTON, J. The estates of the plaintiffs and defendants in 1824 both belonged to the eight heirs of Lemuel Packard, Jr. The brick house and shed of the defendants and the wooden dwelling-house of the plaintiffs had then been built many years. On April 1, 1824, the eight heirs conveyed to Samuel Sprague the land now claimed by the defendants, together with " the dwelling-house and all other buildings standing on said land," and Sprague and his grantees have continuously occupied the estate conveyed since that time.

On the same day six of the heirs conveyed to the other two heirs, Arza and David Packard, the land claimed by the plaintiffs, together " with all the buildings standing thereon," and this estate has been since occupied by the plaintiffs and their grantors. The presumption is strong that the dividing line between the two estates intended to be described in the deeds is the same as the line upon which the buildings were built. But however this may be, the exclusive and adverse occupation by each party upon his side of the line of the buildings would give him a title by prescription at the end of twenty years.

Owing to the uncertainty as to the exact boundaries of Pleasant and Fayette Streets, it is probably impossible to ascertain whether these two lines exactly correspond. But this is immaterial. The defendants and their grantors have occupied up to the line claimed by the defendants, adversely and exclusively, since 1824. This gave them a title to the soil by prescription after the lapse of twenty years. The fact that the plaintiffs' eaves or gutter projected over the defendants' line, as stated in the report, would not prevent their acquiring a title by prescription. Their occupation of the soil was exclusive, adverse and uninterrupted. It was a question of fact whether the plaintiffs by the projection of their eaves gained an easement by prescription, and no appeal was taken from the finding of the presiding justice upon this question. *Carbrey* v. *Willis*, 7 Allen, 364.

The ruling that the plaintiffs were not entitled to any right of light and air over the defendants' land, was correct. It is the established law, in this Commonwealth, that an easement of light and air cannot be acquired by prescription. *Rogers* v. *Sawin*, 10 Gray, 376. *Carrig* v. *Dee*, 14 Gray, 583. *Richardson* v. *Pond*, 15 Gray, 387.

The plaintiffs admit this, but claim that the right of light and air was granted by the deed of the heirs of Lemuel Packard, Jr., to their grantors. We do not think that this claim can, upon the facts of this case, be sustained. As before stated, on April 1, 1824, the two estates of the plaintiffs and the defendants were both owned by the eight heirs of Lemuel Packard, Jr. On that day the eight heirs conveyed to Samuel Sprague the estate now

held by the defendants, by a warranty deed, containing a covenant that the premises were free of all incumbrances. By a deed of the same date six of the heirs conveyed to the other two, Arza and David Packard, the estate now held by the plaintiffs. These two deeds were acknowledged on the same day, before the same magistrate, and recorded on the same day. There is nothing to indicate that the deed to Arza and David Packard was prior to the other, and it must be assumed that the two deeds were simultaneously executed and delivered, and are to be construed as parts of one transaction. The question whether the deed to Arza and David Packard granted an easement of light and air over the other estate, is a question of the intention of the parties. No such easement is expressly granted in the deed; and when we consider that the grantees and the grantors in that deed are joint grantors in the deed to Sprague, and therein expressly covenant that the estate conveyed is free of all incumbrances, it seems clear that it was not the intention of the parties to create an incumbrance, by granting, by a simultaneous act, an easement of light and air in favor of the adjoining estate. There having been a unity of title up to the time of these conveyances, no easement existed which had become annexed to the plaintiffs' estate. The windows existing in the house sold to Arza and David, though convenient, were not necessary to the enjoyment of the estate granted; and we think it clear that it was not the intention of the parties to these deeds to create a servitude upon one estate in favor of the other. We are of opinion, therefore, that the plaintiffs have shown no easement of light and air over the defendants' land. *Collier* v. *Pierce*, 7 Gray, 18. *Carbrey* v. *Willis*, 7 Allen, 364, and cases cited. *Johnson* v. *Jordan*, 2 Met. 234.        *Decree affirmed.*