## ATTORNEY GENERAL *vs.* HENRY B. WILLIAMS.

Suffolk.   Jan. 23. — June 23, 1885.   COLBURN, J., absent.
Nov. 20. — 23, 1885.   DEVENS & GARDNER, JJ., absent.

An information in equity, in the name of the Attorney General, lies to enforce the stipulation in a bond for a deed of land given by the Commonwealth, that a passageway of a certain width in the rear of the premises is to be kept open and maintained by the abutters in common, although the Commonwealth reserves to itself the right to enter upon the premises by its agents, and, at the expense of the party in fault, to remove or alter, in conformity with the stipulations in the deed, any building, or portion thereof, which may be erected on the premises in a manner or to a use contrary to the stipulations.

A bond for a deed of land given by the Commonwealth described it as running a certain number of feet "to a passageway sixteen feet wide; thence westerly on the line of said passageway; . . . . also all that part of said passageway sixteen feet wide that lies southerly of its centre line, and between the easterly and westerly lines of said premises extended; reference being had to the plan

accompanying the fifth annual report of the Commissioners on the Back Bay."
A reference to this plan showed a system of streets covering an extensive ter-
ritory, with passageways for the accommodation of the houses on two streets,
and for access to their rear entrances.  The bond further provided, that "any
building erected on the premises shall be at least three stories high for the main
part thereof, and shall not in any event be used for a stable or for any mechani-
cal or manufacturing purposes;" and that "a passageway sixteen feet wide is
to be laid out in the rear of said premises, the same to be filled in by the Com-
monwealth, and to be kept open and maintained by the abutters in common."
The obligee in the bond built a house up to the line of the passageway, and
built bay windows from a point eight feet above the sidewalk, and extending
from three to four feet into the passageway, to the top of his house, six stories
high.  *Held*, upon an information in equity by the Attorney General, that a
passageway sixteen feet wide was to be kept open to the sky throughout its en-
tire length.  *Held, also,* that the abutters on the passageway between two cross
streets could not, by agreement among themselves, discontinue so much of the
passageway.

On an appeal from a decree in equity of a single justice of this court, ordering cer-
tain projections from a building to be removed within thirty days, if the evi-
dence is not reported, this court cannot say that a longer time should have been
allowed.

INFORMATION IN EQUITY, at the relation of the Harbor and
Land Commissioners, to restrain the erection of bay windows or
projections extending into or over a passageway in the rear of
the defendant's house on the corner of Boylston Street and Exe-
ter Street in Boston.  Hearing before *Devens*, J., who reserved
the case for the consideration of the full court.  The facts ap-
pear in the opinion.

*H. N. Shepard*, Assistant Attorney General, for the plaintiff.

*E. R. Hoar & F. A. Brooks*, for the defendant.

C. ALLEN, J.  The first question which we have considered
is, whether an information in the name of the Attorney General
can be maintained to enforce the stipulations in respect to the
passageway.  In *Attorney General* v. *Gardiner*, 117 Mass. 492,
it is declared that the Commonwealth, in devising the scheme of
improvement of the Back Bay lands, acted in a twofold capacity,
— as the proprietor of lands which it held and might sell, and as
the sovereign power, authorized to lay out highways for the ben-
efit of the public; and that, in the latter capacity, it might en-
force these provisions and restrictions, against all persons bound
by them, by an information in equity in the name of the Attor-
ney General.  It is suggested that there is a distinction between
that case and the present in this particular, — that there the

information was brought to enforce restrictions imposed against building on the front part of the lots bounding on the highway, for the benefit of the public, while here it is brought only in the interest of a few private owners of the adjacent property bounding on the passageway. But the Commonwealth properly reserved to itself the right to enter upon the premises by its agents, and, at the expense of the party in fault, to remove or alter, in conformity with the stipulations, any building, or portion thereof, which might be erected on the premises in a manner or to a use contrary to the stipulations. Also, by the Pub. Sts. *c.* 19, § 5, in all cases where the Commonwealth has such right, all grantees under the deeds by which such right is reserved, and their legal representatives and assigns, may by proceeding in equity compel the board of Harbor and Land Commissioners so to enter and remove or alter such building or portion thereof.

It does not, in this case, appear affirmatively that the Commonwealth has sold all of its land in the neighborhood of the premises in question, and that it has no direct pecuniary interest in enforcing the stipulations. But assuming the fact to be so, it still has a duty to perform in this respect. Moreover, it may be said to have constituted itself a trustee for all the parties in interest, by the form of the stipulation, with the implied assent of each grantee who takes a deed containing it. In either aspect, it has such an interest and duty as to entitle it, by its proper officer, to sue in this court on behalf of the rights and interests of those who claim its protection.

The principal ground of objection to the maintenance of the information is, that the defendant has not infringed upon the stipulation referred to. Before considering this question in the light of the particular stipulation, it may be well to review some of the principal authorities cited at the argument. The leading case upon this subject is *Atkins* v. *Bordman*, 2 Met. 457, where it was held that the owner of land, over which his grantor had reserved a passageway, might, under the peculiar circumstances of that case, lawfully cover such passageway with a building, if he left a space so wide, high, and light that the way was substantially as convenient as before for the purposes for which it was reserved. There, from the language of the reservation,

construed in the light of the existing facts and circumstances, the right reserved was held to be that of "a suitable and convenient footway to and from the grantor's dwelling-house, of suitable height and dimensions to carry in and out furniture, provisions, and necessaries for family use, and to use for that purpose wheelbarrows, hand-sleds, and such small vehicles as are commonly used for that purpose, in passing to and from the street to the dwelling in the rear, through a foot passage, in a closely built and thickly settled town." It was a use which was individual to the occupant of that house, and not for the public. It was limited to certain simple uses, connected with getting things into and out of the house. It is obvious that the rights of the single person entitled under such circumstances to a passageway are not necessarily identical with the rights involved in the present case.

In *Schwoerer* v. *Boylston Market Association*, 99 Mass. 285, the provision in the deed establishing the passageway declared that it should "not be subject to have any fence or building erected thereon;" and this was held to give a right to have the entire court or passageway kept open to the sky, for light, air, and prospect, and every other accommodation and advantage which such an open court might furnish to an estate abutting upon it.

In *Brooks* v. *Reynolds*, 106 Mass. 31, the passageway was declared in the deed to be for light and air, and was always to be kept open for the purpose aforesaid; and this was held to give a right to the open and unobstructed passage of light and air from the ground upwards, and throughout the length of the passageway.

The case of *Salisbury* v. *Andrews*, 128 Mass. 336, is more like the present case. There tenants in common had laid out their land in Boston with a passageway or court, upon both sides of which they had erected buildings fronting upon the way; and, by a deed of partition of the property, they provided that the way "shall be left and always lie open for the passageway or court aforesaid, for the common use and benefit of both of said parties and their respective estates." It was held that the right of an owner under this deed was not simply a right of way, but a right to the use and benefit of an open court, extending as well to the

light and air above as to actual travel upon the surface of the earth.

It is necessary now to look at the terms of the bond in which the stipulation relied on in the present case is contained, in order to see what it means. In the first place, it is to be borne in mind that the place in question is a part of a great scheme of improvement of waste land in a city, for streets and dwellings. The description of the land carefully defines the width and lines of the passageway: " running one hundred and twelve feet to a passageway sixteen feet wide; thence westerly on the line of said passageway; . . . . also all that part of said passageway six- teen feet wide that lies southerly of its centre line, and between the easterly and westerly lines of said premises extended; refer- ence being had to the plan accompanying the fifth annual report of the Commissioners on the Back Bay." A reference to the plan shows a system of streets, covering an extensive territory, with passageways for the accommodation of the houses on two streets, and for access to their rear entrances. " Any building erected on the premises shall be at least three stories high for the main part thereof, and shall not in any event be used for a stable or for any mechanical or manufacturing purposes." There were also other provisions showing that dwelling-houses of a high class were contemplated. Afterwards followed the partic- ular stipulation relied on, " that a passageway sixteen feet wide is to be laid out in the rear of the premises, the same to be filled in by the Commonwealth, and to be kept open and maintained by the abutters in common."

It was contemplated that buildings might be erected on both sides of this passageway. Each owner might build up to the line of it. The defendant has done so, and has built bay win- dows from a point eight feet above the sidewalk, and extending from three to four feet into the passageway, to the top of his house, six stories high. If the opposite owner should do the same, the passageway between the buildings, extending up- wards from a point beginning eight feet above the surface of the ground, would be eight feet, instead of sixteen, in width. It would be half closed up, so far as light and air and prospect are concerned. And, if this may be done, it is difficult to place any practical limit to what might be done in this manner. The

passageway was designed as a thoroughfare for the accommodation of many persons. In appearance, it is on the plan indistinguishable from a narrow street. It is connected at each end with broad and important streets. It was to be kept open. No gates could be put at the ends of it. It was to be "maintained," that is, kept in good order for use. Its width shows that it was designed for vehicles drawn by horses, as well as for travellers afoot. The supplies for all the houses on both sides of it, for its entire length, would be chiefly deliverable, and all refuse matter removable, by its means. Thus we have a passageway of defined dimensions, in the rear of all the houses on two broad streets, designed for use by all who may have occasion to seek the rear entrances to any of the houses on either street, — a passageway available also for police purposes and for use in the extinguishment of fires, — a passageway which is to be maintained, and kept open, and designed for horses and wagons, in a part of a large city which is designed to be wholly occupied by dwellings of a high class, to which air and light and prospect are not only desirable, but essential, in the rear as well as in the front, with no limitation to the use which may be made of it or of the persons by whom it may be used.

In view of these considerations, we think the language of the stipulation was designed to signify a separation of sixteen feet at least between the rear portions of the buildings abutting on the passageway. A passageway sixteen feet wide was not merely to be kept open at the ends, but open to the sky throughout its entire length, for the general convenience and benefit. It is easy to see that the rights of others would be lessened, upon any other construction. The opposite owner, who might not wish in like manner to build into the passageway, would have in the rear of his house a space just so much the narrower. The adjacent owner on the same side, who did not wish to occupy a part of the passageway with his building, would have light, air, and prospect cut off. The right themselves to occupy the passage in this manner would be no equivalent to owners who did not wish to build their houses so as to extend back to the line of it.

There is nothing in the facts proved at the hearing and reported to us which in any way controls the construction thus put

upon the language of the stipulation.   The result is, that a decree must be entered for the removal of the projections.

*Decree accordingly.*

The rescript in this case was filed on June 23, 1885, and directed a " decree for the plaintiff."

On September 23, 1885, the defendant filed a petition for a rehearing, setting forth, among other reasons therefor, that " all the abutters on said passageway on the same side with the premises in question have formally assented in writing to the maintenance of said windows; that many of those on the other side have so assented; and that your petitioner believes that the assent of all will be obtained, except that, by chapter 201 of the acts of 1885, certain lots were granted to the city of Boston, the officers of which, your petitioner believes, will not object thereto."

The case was then heard, before *C. Allen*, J., on a motion of the Attorney General for the entry of a decree.   The judge declined to reserve the case for the consideration of the full court, but made a statement of certain facts as they appeared before him, for whatever use either party might be entitled to make of it.   From this statement it appeared that the judge " heard the parties and took the testimony of the defendant upon certain points; " that the defendant erected the bay windows in controversy under the advice of legal counsel that his right to do so was clear; that the owners of many of the lots abutting on the passageway over which they project had signed a paper assenting to the continuance of the bay windows as they now are; that the owners of certain others of the lots, or persons representing such owners, had promised, or expressed a willingness, to sign said paper, and the defendant believed all such owners would finally sign said paper except the city of Boston; and that the city owned three adjacent lots, one of which is opposite to a portion of the land on which the building erected by the defendant stands, and the officers of the city did not feel authorized to sign the assent.

The judge entered a decree that the defendant remove within thirty days, at his own expense, the bays or projections in question; and that the defendant pay the costs in the suit.

From this decree the defendant appealed to the full court.

On October 10, 1885, the defendant filed a further petition, alleging that since the decree other abutters had consented in writing to the maintenance of the bay windows, so that every abutter on the passageway had consented thereto in writing.

Without any action on this petition, the case came on for argument before the full court; and it was stated by the counsel for the defendant, and assented to by the Attorney General, that all the abutters on so much of the passageway as lies between Dartmouth Street and Exeter Street had assented in writing to the continuance of the projections in question.

It appeared, from a plan used at the hearing, that the passageway in question runs from Arlington Street, and is crossed by a number of streets.

*G. S. Hale,* for the defendant.

*H. N. Shepard,* Assistant Attorney General, (*E. J. Sherman,* Attorney General, with him,) for the plaintiff.

HOLMES, J. We assume in favor of the defendant that the case now stands for the purpose of the present decision as if all the abutters on the passageway between Dartmouth Street and Exeter Street had executed releases in such form as to preclude themselves, or any subsequent purchasers from them, from making any complaint hereafter in respect of the present structures. But we are of opinion that, in view of the form of the stipulation in the bond of the Commonwealth to the defendant, and the statutes in force when that bond was executed, the rights reserved by the Commonwealth, whether reserved for the benefit of other land, including that owned by itself, or of the public, or both, are not confined to the abutters who have released, and that those abutters cannot discontinue the passage by private agreement among themselves. If the only purpose had been to create a private way for the use of the adjoining estates between Dartmouth Street and Exeter Street, we may presume that an easement would have been reserved and granted in the ordinary form, and that the intervention of the Commonwealth and the cumbrous machinery provided by statute for setting the board of Harbor and Land Commissioners in motion would not have been thought necessary. Pub. Sts. *c.* 19, § 5.

The appeal is frivolous. The only matters in the decree of the single justice not covered by the rescript are the time within

which the projections are to be removed, and the question of costs. The record certainly discloses no reason why costs should not be given against the losing party, according to the usual rule. As to the time allowed, the only evidence which we could consider would be that on which the single justice acted, and that evidence is not reported. It cannot have been supposed that we could say, as matter of law, that thirty days was not ample time to remove bay windows. These are the only points before the court.                         *Decree accordingly.*