ANNIE B. CROCKER & others *vs.* CHARLES U. COTTING
& others, trustees.

Suffolk.    January 24, 1901. — April 2, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER,
HAMMOND, & LORING, JJ.

*Way,* Extent of easement.  *Determination of incumbrances.*   *Deed,* Construction.

If a right of way is granted and nothing more appears from the deed or the at-
tending circumstances, the owner of the servient tenement may build over the
way or do anything else so long as he does not interfere with or obstruct the
right of passage over the soil.

A way created by deeds to the abutters was originally designed as a passageway
in the rear of lots intended for dwelling houses on Boylston Street in Boston,
the grantor retaining the fee, and there being when some of the deeds were given
a building *immediately abutting on the way with windows in the second,* third
and fourth stories opening upon it.    *Held,* that the way was shown by the at-
tending circumstances to have been granted as an open way and that it could
not be arched over by the owners of the fee.  HOLMES, C. J., HAMMOND & LOR-
ING, JJ., dissenting.

A way by prescription cannot be determined or defined on a petition under St. 1889,
c. 442, which relates only to cases where the title to land "appears of record"
to be affected by a possible incumbrance.

The description in a deed of a rear lot as "an enlargement" of a front lot on a city
street previously conveyed does not annex to the rear lot the easements appur-
tenant to the front lot.

PETITION, filed February 19, 1898, under St. 1889, c. 442, to
determine and define the nature and extent of the respondents'
easements in a passageway five feet wide and sixty-two feet long,
running easterly from Carver Street in Boston at the rear of
buildings fronting on Boylston Street belonging to the petition-
ers and the respondents.

The case was heard by *Hammond,* J., who reported it for de-
termination by the full court.    The facts reported are stated
by the court.    A reduced copy of a sketch used as a chalk at
the argument is printed on the opposite page.

The respondents offered to prove by witnesses, that in 1840 a
passageway in the rear of a row of houses parallel to the street
in front of them was and long had been a common form of rear
entrance in Boston, that there existed a uniform public usage

and custom to leave such rear passageways open to the sky,
whatever their width and length, and that such passageways are
now common and they still are usually open to the sky; that

it was in 1840 a common thing in schemes for laying out land to establish such a rear passageway parallel to the street on which the lots fronted ; that by uniform public usage such passageways so laid out were open to the sky, and that the scheme shown by the plan made by Alexander Wadsworth, according to which the conveyances were made, was one of this character.

The justice excluded the evidence offered, under the objection and exception of the respondents.

The questions involved in the case and reserved for the full court were :

1. Whether the passageway might be built over by the owner of the fee thereof, the stipulation of the parties on file governing the height at which the same might be covered, if at all.

2. Whether the petitioner was entitled to have the questions raised by the amendment to the petition, as to the right of the defendants Cotting and Welch to use the passageway in connection with their rear lot, determined in this proceeding. If the court was of opinion that those questions must be determined, then, —

3. Whether the deed of the Townsend heirs to Williams, the predecessor in title of Cotting and Welch, conveyed rights in the passageway appurtenant to the rear lot.

4. Whether the owners of the rear lot acquired a prescriptive right in the passageway, and whether such prescriptive right could be availed of in this proceeding.

In case the court was of the opinion that the evidence excluded should have been admitted, the case was to stand for further hearing ; otherwise, such decree was to be entered as justice and equity required.

*S. Lincoln & F. Rackemann*, for the petitioners.

*W. L. Putnam*, for the trustees under the will of Samuel K. Williams.

*E. G. Loomis*, for the trustees under the will of George S. Winslow.

MORTON, J. This is a petition under St. 1889, c. 442, to determine the rights of the parties in a certain passageway. Questions in regard to the same way have already been before this court in 166 Mass. 183, 170 Mass. 68, and 173 Mass. 68. The principal question now is whether the passageway can be

covered over. There is also a question whether the respondents Cotting and Welch have a right to use the passageway in connection with a rear lot belonging to them and adjoining their front lot and forming a part of the same original tract of land as that did. There is a further question in regard to the admission of evidence, which, however, in the view which we have taken of the case need not be considered.

The case was heard by a single justice and comes here on a report made by him ; — such decree to be entered as justice and equity require. There is a stipulation by the parties as to the height that the way may be covered over, if it should be finally held that it need not be kept open.

From the report it appears that the way was originally a part of a tract of land belonging to the heirs of one David S. Townsend bounded northerly by Boylston Street and westerly in part by Carver Street and in part by a lot on the corner of Boylston and Carver Streets belonging to other parties. In 1840 the entire tract was laid out by the heirs according to a plan drawn by Alexander Wadsworth. The land on Boylston Street was divided into five lots each about one hundred and ten feet deep. The passageway in question extended at the outset along the rear of these lots, — one hundred and thirty-six feet from Carver Street. At least it did so as a matter of record grant. Subsequently in October, 1842, the grantees of the two easternmost lots released their interest and the scheme was changed in part so that the way extended to the westerly line of the lot now belonging to the respondents Cotting and Welch, — a distance of sixty-two feet from Carver Street. This was the situation at the time when the lots now belonging to the petitioners and to the respondents, Winslow and Loomis, were conveyed by the Townsend heirs in 1843, and the way has remained ever since as thus left. The petitioners own the lot on the corner of Boylston and Carver Streets. But they do not derive their title to it from the Townsend heirs and it may, therefore, be disregarded. The lots to which they derive title from the Townsend heirs are the westernmost of the Boylston Street lots on the northerly side of the passageway and a lot abutting on Carver Street on the southerly side of the way. The deeds conveying these lots bounded them on the way. That of the Boylston Street lot

conveyed it with "the right of passing and repassing in upon and over and of draining under such passageway in common with us our heirs and assigns and all others who may be entitled to said easements and of repairing or replacing said drain when necessary, subject however to payment of a proportionate part of the expense of keeping in repair said passageway and drain." The lot on the southerly side of the way was conveyed with similar rights. The respondents Winslow and Loomis own the Boylston Street lot next easterly of that belonging to the petitioners. It also was bounded on the way, and was conveyed with similar rights in the way. The respondents Cotting and Welch own the lot next easterly of that belonging to Winslow and Loomis. It was not bounded on the way but was conveyed with similar rights in the way. The presiding justice found that "The mesne conveyances to the petitioners and respondents have passed to them respectively all and the same rights and easements in the passageway originally granted to their respective predecessor in title, and by substantially the same words in the several deeds." The Townsend heirs retained the fee in the passageway, and it has passed from them by mesne conveyances one third to the petitioners, one third to the respondents Cotting and Welch and one third to the respondents Winslow and Loomis. The Boylston Street lots were all conveyed with building restrictions limiting the nearness to the street of the front lines of buildings that might be erected thereon, and down to about 1880 the buildings on them were used for first class dwelling purposes only. In 1895 and since they were or have been used for mercantile purposes. When the lot on the southerly side of the passageway was conveyed there were dwelling houses on it fronting on Carver Street. The northerly wall of one of these houses coincided with the southerly line of the way, and there were windows in the second, third and fourth stories opening upon the passageway. These buildings were used as dwelling houses until 1895 when they were replaced by a building used for mercantile purposes and for offices by the petitioners. Proceedings are pending in the Probate Court for a partition of the passageway.

The question is one of construction, of ascertaining the intention of the parties in creating the way, and of giving effect to

that intention if it can be done consistently with established rules of law. There is no rule that determines once and for all whether parties have or have not the right to build over a way. It would be possible to establish such a rule perhaps, but it has not been done. In some cases it has been held that a way could be built over. *Atkins* v. *Bordman,* 2 Met. 457. *Gerrish* v. *Shattuck,* 132 Mass. 235. *Burnham* v. *Nevins,* 144 Mass. 88. *Grafton* v. *Moir,* 130 N. Y. 465. In other cases it has been held that it could not. *Schwoerer* v. *Boylston Market Association,* 99 Mass. 285. *Brooks* v. *Reynolds,* 106 Mass. 31. *Salisbury* v. *Andrews,* 128 Mass. 336. *Attorney General* v. *Williams,* 140 Mass. 329. In each case the question has been one of construction, what the parties to "the convention," as Shaw, C. J. termed it in *Atkins* v. *Bordman,* intended. It was so held in *Atkins* v. *Bordman, supra,* the leading case. In *Gerrish* v. *Shattuck, supra,* the opinion begins by saying that "The rights of the plaintiff depend upon the construction to be given to the reservation in the deed," etc. And in *Burnham* v. *Nevins, supra,* it is said that "the extent of the easement claimed must be determined by the true construction of the grant or reservation . . . aided by any circumstances surrounding the estate and the parties which have a legitimate tendency to show the intention of the parties." Speaking generally, if a right of way is created, and nothing more appears from the deed or the attendant circumstances, the owner of the servient tenement may build over the way, or do anything else so long as he does not interfere with or obstruct the right of passage over the soil. The cases on which that proposition rests in this State are *Atkins* v. *Bordman, Gerrish* v. *Shattuck,* and *Burnham* v. *Nevins, supra.* See Jones, Easements, § 395. In *Atkins* v. *Bordman* and *Gerrish* v. *Shattuck* the way was created by reservation. In such cases it would seem to be clear that the right or easement over the granted premises will be limited to that expressly reserved. It is said that "if the grantor intends to reserve any right over the tenement granted, it is his duty to reserve it expressly in the grant." *Wheeldon* v. *Burrows,* 12 Ch. D. 31, 49. *Brown* v. *Alabaster,* 37 Ch. D. 490, 504, 505. In *Burnham* v. *Nevins,* the easement was created partly by reservation and partly by grant over lots which were subsequently conveyed. Those cases all differ

from this. In the present case the land, of which the lots in question belonging to the petitioners and respondents constituted a part, was laid out by the Townsend heirs into house lots as an entire tract in 1840. The lots on Boylston Street were intended for first class dwelling houses. A passageway was provided in the rear of these. As at first designed it extended a distance of one hundred and thirty-six feet from Carver Street. Subsequently it was shortened to sixty-two feet, its present length. Manifestly it would add to the desirability of the Boylston Street lots for first class dwelling houses if there was an open passageway in the rear for light, and air, and prospect. And when the length of it as originally intended is also taken into account it would seem that it must have been designed as an open way. The fact that it was afterwards shortened cannot affect, we think, the character originally impressed upon it. Further, the original grantors retained the fee of the way, as finally laid out and established, in themselves; — a fact inconsistent with a right on the part of the abutting owners to build over it, and consistent only with the view that it was to be kept open. There is also the circumstance that when the Townsend heirs conveyed the lot on the southerly side of the way, a building, whose north wall coincided with the southerly line of the way, had been erected on it with windows in the second, third and fourth stories opening on the way. It is true that the way is a narrow one, but that fact of itself does not show that this way was not to be kept open. It is said, and no doubt truly, that there are narrow ways in Boston that are left open and wide ways that are arched over.

It is immaterial it seems to us that the deeds were not all given at the same time. The way retained the character originally impressed upon it whatever that was and the deeds were given pursuant to the original scheme which remained unaltered except that the grantors of the two easternmost lots released their rights in the way in exchange for similar rights in a way on which the rear lots subsequently bought by them abutted. In the absence of anything in the deeds showing whether the way was to be kept open or could be covered over, we are obliged to resort to the attendant circumstances for aid in their construction, and taking these into account, it seems to us, that

it was the intention of the parties that the way should be an open way, and that the deeds under which the petitioners and respondents derive their titles should be so construed.

The next question relates to the right of the respondents Cotting and Welch to use the passageway in connection with the rear lot belonging to them. After the predecessor in title of Cotting and Welch had purchased from the Townsend heirs the Boylston Street lot he purchased from them a lot in the rear of and adjoining that lot. The deed of the lot thus purchased recited that the parcel of land conveyed by it was "designed as an enlargement of the tract of land conveyed to" the grantee of the Boylston Street lot. Cotting and Welch contend that they have a right to use the passageway in connection with this lot either on the ground of prescription or on the ground that the description of the lot as an enlargement of the Boylston Street lot annexed to it the easements appurtenant to that lot. So far as their alleged right depends on prescription we are of opinion that it cannot be considered in this proceeding. The statute under which this petition is brought provides that, "When the title to land appears of record to be affected by a possible condition, restriction, reservation, . . . any person having a freehold estate . . . may file a petition," etc.  St. 1889, c. 442, § 1.  Titles affected by prescriptive rights are excluded by the words of the statute, and are not we think included within its intent, — the idea being, it seems to us, to enable parties to obtain the construction of the court in regard to questions arising under written instruments and not to determine matters *in pais.* See *Arnold* v. *Reed,* 162 Mass. 438 ; *Blanchard* v. *Lowell,* 177 Mass. 501.  In respect to the other question it is to be observed that the deed of the rear lot contained no reference to the passageway in question.  It bounds the lot on the south by a five foot passageway, which it is admitted is not the passageway in question, and gives rights of passing and repassing and of drainage in and over the passageway thus referred to.  There are no words of grant or covenant in respect to the passageway in question or of any right or easement in or over the same.  Apparently the grantee was content with the right of passing and repassing and of drainage over the way on which the lot abutted on the south.  But however that may have been we do not think

that the description of the rear lot as "an enlargement of the tract of land" previously conveyed can be fairly held in the absence of any words of grant or covenant to annex to the rear lot the easements appurtenant to the front lot. The language referred to may have been inserted merely to make the situation of the rear lot plainer.

The remaining question relates to evidence that was offered by the respondents and excluded of a public usage or custom in Boston to have passageways like that in this case open to the sky. The respondents have suffered no harm from the exclusion of this evidence and it is not necessary to consider whether it was admissible.     *Decree accordingly.*

The CHIEF JUSTICE and HAMMOND and LORING, JJ., do not agree with so much of the opinion as decides that the way must be kept open.