## JAMES J. GOODWIN *vs.* ISAAC BRAGAW.

First Judicial District, Hartford, January Term, 1913.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

The grantee of land bounded on a private passway or gangway is not presumed to own the fee of any part of the way, nor to have the right to build over it.

The respective rights of the grantor and grantee in a passway created by deed, are to be ascertained from the language of the instrument when read in the light of surrounding circumstances.

The owner of land in the center of a city conveyed a part to *A* and a part to *B*, retaining the rest. The lots were shallow and intended for business purposes. The deed to *A* included a twelve-foot gangway "to be improved by the said grantor and grantee for their mutual improvement and benefit, and no building or other incumbrance shall at any time be placed on said gangway." The deed to *B* granted the "improvement in common" with the grantor and *A*, of the same gangway "unobstructed by any building or other impediment whatever." *Held* that under these deeds all the owners abutting on the gangway acquired the right to have the twelve-foot space kept open to the sky.

Such an easement is not a personal one, but one appurtenant to the land, and runs with the land, whether mentioned in subsequent conveyances or not.

An easement may be acquired by adverse possession, and one cotenant may thereby enlarge his rights as against another.

An owner abutting on a court, private way, or the bed of a stream, to which he has no title, who builds over the same and maintains the structure under a claim of right for the requisite statutory period, may thereby acquire a prescriptive right to have the structure remain.

The defendant's grantor acquired by deed land on both sides of a gangway, with the right to use the gangway in common with the other abutting owners, but with no right to build upon or over it. He erected a covered structure across the gangway about fifteen feet above its surface, connecting his buildings on either side, and he and the defendant continuously maintained and used it for more than fifteen years, enlarging it from time to time but always including its original limits. *Held:*—

1. That the defendant thereby acquired the right by adverse possession to the space occupied by the original structure; but that he had no right now to build a new and larger one, nor to maintain additions to it which had not stood at least fifteen years.

2. That the judgment, which enjoined the further maintenance of any structure whatever over the gangway, was erroneous.

3. That the building and maintenance of such a structure did not constitute an ouster of the owner of the soil within the gangway limits, or of the space above the soil except so much of it as was occupied by the structure; and therefore a deed of the fee of the gangway was not void on the ground that the grantor was ousted of possession by reason of the existence of the overhead structure.

4. That the construction and maintenance of a secret underground passageway or tunnel connecting the defendant's buildings on either side did not confer a prescriptive right, since such acts were neither open nor adverse.

This court is not authorized to consider and weigh the contents of written instruments which the trial court has excluded, although such instruments may appear in the appeal record; for the function of determining facts from evidence is one which belongs to the trial court exclusively.

The finding of facts made for purposes of an appeal ought not to be incorporated in the judgment-file; but if it is, the facts so found cannot be disregarded, but are as conclusive as if they had been regularly found and made a part of the judgment, as provided by General Statutes, §§ 759, 763.

Argued January 9th—decided May 1st, 1913.

ACTION to restrain the defendant from maintaining, occupying and using a structure erected by him above and across a gangway alleged to be owned in fee by the plaintiff, and for damages, brought to and tried by the Superior Court in Hartford County, *Curtis, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *Error in part.*

*Charles Welles Gross,* for the appellant (defendant).

*William F. Henney* and *John T. Robinson,* for the appellee (plaintiff).

WHEELER, J. The complaint alleges that the plaintiff is the owner of the fee of a gangway and of two pieces of land abutting thereon, and as appurtenant to said land has the easement therein created by the

deeds establishing the gangway; and that the defendant is the owner of two pieces of land abutting on opposite sides of this gangway in which he has a mere right of passage, and over which he is maintaining a structure connecting the buildings upon his said two pieces, for the removal of which structure a mandatory injunction is prayed for.

The defendant denies the plaintiff's title and easement, and alleges his ownership of the fee of the gangway between his north and south lines subject to the right of passage of the plaintiff and others; and, through acts of ownership, his title by adverse possession to the portion of the gangway between the north and south lines of his property, subject to the right of passage of the plaintiff and others. The defense of estoppel is not pursued.

The questions raised by the appeal relate to the respective rights of the parties in this gangway, and to certain rulings on evidence.

Dimock and Marsh, predecessors in title of both plaintiff and defendant, owned a tract of land in the business center of Hartford, and in 1828, by two deeds, carved out of said tract this gangway. The first deed, to Oliver D. Cooke, following the description of the land conveyed, recited: "Which said pieces of land together with a gangway twelve feet wide to be opened by the grantors, are to be improved by the said grantors & grantees, together with a well of water situated on the north line extended as aforesaid for their mutual improvement & benefit, and no building or other incumbrance shall at any time be placed on said yard & gangway." The second deed, to Edward P. Cooke, following the description of the land conveyed, recited: "With the improvement in common of a gangway twelve feet wide to be opened by the grantors in rear of said building lots to Lee Street, all of which common

yard & gangway & well shall be and remain for the mutual use & benefit of the grantors, grantee & said Oliver D. Cooke, unobstructed by any building or other impediment whatsoever."

Dimock and Marsh subsequently conveyed to others the rest of the tract abutting on this gangway and yard, but neither they, nor their representatives or heirs, conveyed the fee to the gangway until their heirs in 1910 conveyed the fee by deeds which were admitted in evidence over the defendant's objection, because: first, the deeds were given by one out of possession, and hence were void; second, the deeds were quitclaim deeds without a chain of title back of them, hence it did not appear that the grantors had a right to convey.

The ouster is predicated upon the following acts of claimed disseisin: In 1882 the defendant's predecessor in title, under claim of right, erected a covered bridge over said gangway connecting its buildings and used as a passageway between them, being seven feet wide and eight or nine feet high and fourteen or fifteen feet from the ground. In 1909 this structure was widened two feet and an additional story added. This structure so remained until 1910, when the present three-story brick building was constructed. Before the wooden structure was removed, the north wall of the brick building was constructed through and within the wooden building, which was thereafter removed. This brick building rests upon defendant's land and covers the entire space of the gangway on which defendant's said land abuts, and is fifteen feet above the surface of the gangway. In 1882 the defendant constructed, and has since maintained, an underground tunnel three feet wide beneath the surface of said gangway. This tunnel was not known to the plaintiff or his predecessors in title until July, 1910, and does not interfere with passage over the gangway. In 1874 defendant's prede-

cessor in title erected a drawbridge, fastened to the defendant's building by hinges, and raised and lowered at the convenience of defendant and his predecessor in title by rope and pulley, across said gangway and two feet above its surface. Several years ago this drawbridge was removed and its use abandoned. None of these structures interfered with the right of passage of those using the gangway. None of these structures, unless in the case of the 1882 structure, had existed long enough to work a permanent legal disseisin. The tunnel had been built and maintained surreptitiously.

The 1882 structure did not affect the space beneath it or the surface of the gangway. It was not an ouster of the possession of the soil, or of the space above the soil which it did not occupy. The case of *Norwalk Heating & Lighting Co.* v. *Vernam*, 75 Conn. 662, 55 Atl. 168, so decisively settles the point as to make its discussion superfluous. *Waterbury Clock Co.* v. *Irion*, 71 Conn. 254, 41 Atl. 827, it is said, decides the contrary. This is a mistaken understanding of the case. It was an action of trespass; the issue was possession, and not title. To support the action and establish that the building over the stream was a trespass, we held the plaintiff must prove either its own actual possession, or its constructive possession by deed and the absence of actual, exclusive possession by another. We held the finding of the trial court, that the defendant was in possession, was, in the state of the record, justified and not reviewable, and hence the deed by the plaintiff was void because given when ousted of possession. The ouster is commensurate with the occupancy. *Paton* v. *Robinson*, 81 Conn. 547, 551, 71 Atl. 730. There has been no such ouster as would make void these deeds of the fee of the gangway.

The further objection, that as the chain of title was defective it did not appear the grantors had a right to

convey, is well taken. For the purpose of showing the devolution of title of Dimock and Marsh, the plaintiff offered in evidence their wills, which upon objection were excluded. The finding would seem to conflict with a paragraph of the draft-finding marked "proven," reciting that Dimock and Marsh died in Vermont and the wills of each were there admitted to probate; as this accords with the proven facts, we shall assume the trial court intended it as the finding upon this subject. The wills thus constituted a link in the chain of title. Although they appear in the record, we have no authority to admit them in evidence and then weigh their contents. That is the duty of the trial court. We consider only the facts it has found. Without a consideration of the contents of the wills, we do not see any basis in the evidence for the finding that the grantors in these deeds were the sole holders of the record title, or that the exclusion of the wills could not affect the issues, and would, if admitted, simply confirm the title of the grantors to the fee of the gangway. The plaintiff thus failed to establish his ownership of the fee of the gangway. So far as appeared it remained in the representatives, devisees, or heirs of Dimock and Marsh.

The plaintiff's rights in the gangway must rest upon his rights as an abutting owner. These depend upon the intention of the parties in creating the gangway, to be ascertained from the language of the deeds establishing it, read with the aid of the surrounding circumstances. *Lynch* v. *White*, 85 Conn. 545, 84 Atl. 326. The deeds to the Cookes were one transaction, so far as the establishment of the gangway and yard was concerned. The use of the gangway granted is not a mere right of passage, but gives to the parties its "mutual use and benefit" and its "mutual improvement and benefit." The deed to Edward P. Cooke covenants that this gangway shall be "unobstructed by any

Goodwin *v.* Bragaw.

building or other impediment whatsoever," while that
to Oliver D. Cooke covenants that "no building or
other incumbrance shall at any time be placed on said
yard and gangway." The use granted was intended to
be complete and not restricted to any special form of
use. The grantors retained the fee of the gangway,
while the abutting owners were bounded thereon. By
the terms of the deeds it seems reasonably clear that
the parties did not intend the abutting owners to build
over the gangway. By our law the owner abutting on
a gangway is not presumed to have a right to the fee
of any part of the gangway nor a right to build over it.
*Seery* v. *Waterbury,* 82 Conn. 567, 571, 74 Atl. 908.
These grants were only consistent with the purpose of
keeping the gangway open for all purposes. The im-
provement of the gangway was committed to the abut-
ting owners and the owner of the fee. It was their joint
duty to keep the gangway free from buildings or other
incumbrance. The land abutting upon the gangway
is in the business center of Hartford, and, as is plain
from the uses to which it was immediately put, was
intended for business occupancy. The lots were very
shallow in depth, and it is fair to presume were intended
to be built upon to the line of the gangway. A gangway
open to the sky would be of especial value to such busi-
ness property; it would afford opportunity for the de-
livery of goods upon the gangway on the ground floor,
and the yard was intended to give vehicles entering the
gangway a place in which to turn around; and by fur-
nishing light and air to the upper stories, the gangway
would enable every part of these shallow lots to be built
over and used. An open gangway would also be of
benefit in the way of police and fire protection, and the
consequent lessening of insurance rates. Interpreting
these grants in the light of the surrounding circum-
stances, we conclude it was the intention of the parties

to keep the gangway open to the sky. Instances where grants of easements have been construed to accord with the intention of the parties as giving more than a right of passage, are not infrequent among reported cases. *Crocker* v. *Cotting*, 181 Mass. 146, 63 N. E. 402; *Attorney-General* v. *Williams*, 140 Mass. 329, 2 N. E. 80; *Salisbury* v. *Andrews*, 128 Mass. 336; *Brooks* v. *Reynolds*, 106 Mass. 31; *Schwoerer* v. *Boylston Market Asso.*, 99 Mass. 285; *Mineral Springs Mfg. Co.* v. *McCarthy*, 67 Conn. 279, 34 Atl. 1043. The easement carved out of this tract of land was not a personal one, but appurtenant to the land, and ran with it, whether expressed in subsequent conveyances or not. Each owner of land abutting upon the gangway and common yard had the same easement in the gangway and was a cotenant therein. It follows that the plaintiff, an owner abutting on the gangway, has the right to prevent the defendant, also an owner abutting on the gangway, from interfering with the easement in the gangway common to each alike, unless the defendant has in some lawful way acquired the right to thus interfere.

This he claims to have done, first by having acquired the fee to the gangway by deed and by prescription, and second by having acquired a prescriptive right to the space across the gangway occupied by the structure erected in 1882.

The defendant's deed from Way, in 1898, purports to convey the fee of the gangway, but Way had no title to convey, and the defendant took no right to the fee of the gangway by this conveyance.

An easement may be acquired by adverse possession. *Bradley Fish Co.* v. *Dudley*, 37 Conn. 136, 145. One cotenant may oust his cotenant and obtain title to his land by adverse possession. *Catlin* v. *Decker*, 38 Conn. 262, 267; *Newell* v. *Woodruff*, 30 Conn. 492, 497. And the defendant might have ousted the plaintiff and have

acquired by adverse possession his rights in the gangway. So, too, he might by such means have acquired a part of the plaintiff's rights in the gangway, to the extent of his ouster of the plaintiff of his unity of possession held in common with the other proprietors. An owner abutting upon a court, private way, passway, or the bed of a stream, to which he has no title, who builds over the court, way, or stream and maintains his structure under a claim of right for the requisite statutory period, may obtain the prescriptive right to maintain his structure. *Norwalk Heating & Lighting Co.* v. *Vernam,* 75 Conn. 662, 55 Atl. 168; *Puorto* v. *Chieppa,* 78 Conn. 401, 62 Atl. 664; *Keats* v. *Hugo,* 115 Mass. 204; *Randall* v. *Sanderson,* 111 Mass. 114.

The acts of the defendant from which his prescriptive title is said to arise are with one exception of no consequence. The drawbridge over the gangway has been abandoned. The tunnel under the gangway was maintained without the knowledge, actual or constructive, of the plaintiff. The addition to the structure of 1882, and the brick building, except the part occupying the space of the 1882 structure, cannot be claimed to furnish ground for a prescriptive title. The structure of 1882 was erected under a claim of right; it was maintained until July, 1910, without objection and, presumptively, with the knowledge of the plaintiff and his predecessors in title, and was adverse, since it was, *pro tanto,* an open, visible, and exclusive possession of the space it occupied. *Alderman* v. *New Haven,* 81 Conn. 137, 141, 70 Atl. 626. There is no specific finding of an adverse user, except as that must be inferred from the continued occupancy under the circumstances presented. The facts found as to the erection and maintenance of the 1882 structure—and the evidence fully justifies the finding—are inconsistent with any legal conclusion other than that the defendant had acquired

by adverse possession title to the space over that portion of the gangway occupied by this structure. *Layton v. Bailey*, 77 Conn. 22, 28, 58 Atl. 355; *Spencer* v. *Merwin*, 80 Conn. 330, 336, 68 Atl. 370. This occupancy was of the space filled by the structure of 1882. This did not prevent the use by the plaintiff of the space beneath this structure for all purposes which by the Dimock and Marsh deeds had been granted the plaintiff, nor did it deprive the plaintiff of whatever rights he possessed in the space above, for it neither shut out the light, nor deprived him of the air which this unenclosed space gave him. In short, it did not deprive him of any right which he, as an abutting owner, had in virtue of the Dimock and Marsh grant, except as to the space actually occupied by the structure of 1882. The 1910 building included the space occupied by the structure of 1882, so that the space so occupied has never ceased to be in the open, exclusive, and adverse possession of the defendant since 1882.

The memorandum of decision concluded: "The present owner of the gangway, the plaintiff, is entitled to a mandatory injunction to prevent the development of a greater prescriptive right than the defendant now has to span the gangway with a structure. That is with a structure greater in extent than the structure of 1882." This conclusion followed from the facts found. The judgment should have accorded with the facts and supported this conclusion of the memorandum of decision, instead of decreeing a mandatory injunction against the further maintenance of any structure over the gangway.

We do not deem the other questions of evidence raised of sufficient importance to require discussion.

It was irregular to make the facts found on appeal a part of the judgment. Presumably the judgment-file was drawn and the finding on appeal made by the trial

court at the same time. Since the facts so found are made a part of the judgment-file, they cannot now be disregarded, and are as conclusive as though made up especially for the judgment, as provided by General Statutes, §§ 759 and 763.

The judgment should be modified in accordance with this opinion.

There is error in part.

In this opinion the other judges concurred, except HALL, C. J., who died after the cause was argued and before its decision.