CATHARINE KEATS *vs.* JOHN HUGO & Wife.

Bristol.  October 30, 1873. — June 18, 1874.  COLT & AMES, JJ., absent.

GEORGE EATON & others *vs.* WILLIAM EVANS.

Suffolk.  March 24, 1873.— June 18, 1874.  COLT & DEVENS, JJ., absent.

D. WALDO SALISBURY & others *vs.* WILLIAM T. ANDREWS & others.

Suffolk.  March 24. — June 18, 1874.  AMES & DEVENS, JJ., absent.

The grant of an easement of light and air is not implied from the grant of a house having windows overlooking land retained by the grantor.

If the eaves of a house belonging to one person have projected over the land of another for more than twenty years, the owner of the house has no title in the land of such other person under the eaves, and cannot prevent him from building on that land, if he can do so without interfering with the eaves.

THE FIRST CASE was an action of tort for obstructing the passage of light and air to the plaintiff's dwelling-house in Attleboro.

In the Superior Court judgment was ordered for the defendants on the following agreed facts, and the plaintiff appealed to this court:

On August 10, 1871, the defendants conveyed to the plaintiff by warranty deed in the usual form a certain lot of land with a dwelling-house thereon, situated on the line between the parties, created by said conveyance; the said lot so conveyed being part of a larger lot then, and the remainder of which is now, owned by the defendants. The dwelling-house had windows and a door in that part of the house adjoining the line. Since said conveyance, the defendants placed a structure and wood-shed on their own land against said house, within about eight inches of the same, and still continue said structure there. The dwelling-house is in the same situation as it was at the time it was conveyed to the plaintiff.

*J. Daggett*, for the plaintiff.
*J. Brown*, for the defendants.

THE SECOND CASE was a bill in equity by the trustees under the will of Amherst Eaton, for an injunction to prevent the building of a wall which it was alleged would obstruct the windows of a dwelling-house on Washington Street, in Boston, and an interference with the light and air coming to the same. After the bill was filed the defendant finished the wall, and an amended bill was filed.

The case was reserved for the full court by *Morton*, J., upon the bill, amended bill and answers, and agreed facts, and was as follows:

In 1802 Sarah Davies, under whom both parties claim, purchased a lot of land on the westerly side of Washington Street, in Boston, which now comprises the estates of both parties to this suit. In 1803, by two separate deeds, she conveyed the estate, now held by the plaintiffs to Charles W. Windship, and Windship built thereon the dwelling-house now standing thereon, and owned by the plaintiffs. Said house then had in it windows on the westerly side thereof, overlooking the other land of said Davies, now owned by the defendant, and still has them, though obstructed and darkened by the acts of the defendant. In 1804, Windship reconveyed to Davies all the land so conveyed to him, with the dwelling-house, out-buildings, privileges

and appurtenances. In 1815, Davies died seised of both estates, and at the time of her death she lived in a dwelling-house standing on that part of said lot which is now owned by the defendant, at a distance of about sixty feet from the house now owned by the plaintiffs, the intervening land remaining open and not built upon ; and she left a will, by which she devised all her estates, except some pecuniary legacies, to her niece and adopted daughter, Sarah Davies Williams, from whom the defendant's title is derived. The administrator of Sarah Davies obtained from the proper court license to sell so much of her estate as was necessary for the payment of debts and charges, and did sell under such license, in 1816, the estate now owned by the plaintiffs, to Peter O. Thacher, under whom the plaintiffs claim. This deed conveyed " all the estate of which said Sarah died seised in and to the following described lot or parcel of land with the brick dwelling-house and stable standing thereon," (describing it by metes and bounds,) " with all the privileges and appurtenances to the same belonging." Sarah D. Williams became seised under said will of all that part of said estate which was not sold by the administrator as above stated, and with her husband, John Griggs, remained in possession till her death. After her death, her husband acquired by deed the title of his and her children, and conveyed the same to the defendant, " subject to certain easements of light and air claimed by said Amherst Eaton as owner of the adjoining estate, no such claim being admitted by the parties hereto to be valid." The cornice or eaves of the plaintiffs' house from the time of the erection of the same projected and still project several inches beyond the northerly line of the plaintiffs' wall. The defendant, at the time of the filing of this bill, had commenced the erection of a market-house on his lot adjoining that of the plaintiffs, and has since completed the same, building the southerly wall thereof directly against the northerly wall of the plaintiffs, and carried the same several feet higher than the wall of the plaintiffs' house, building above and below the cornice thereof, but not cutting off the same, and entirely obstructing and closing up several windows thereof, and entirely darkening some rooms and partially darkening others.

*H. W. Paine & T. S. Harlow,* for the plaintiffs.

*J. P. Healy,* for the defendant.

THE THIRD CASE was a bill in equity to prevent the erection of a building on Central Court, in Boston, to a greater height than nine feet and three inches. The case was heard on the bill and answer by *Wells*, J., and by him reported to the full court, in substance as follows :

The estates on Central Court in Boston, now owned and occupied by the plaintiffs and defendants respectively, were both owned, in April, 1824, by Ebenezer T. Andrews, who in that month conveyed by deed to Henry Homes " a brick house and the land under and adjoining the same," describing the premises by metes and bounds. This is the estate now owned by the plaintiffs. At the time of the conveyance to Homes, the five story brick building now occupied by the plaintiffs was standing on the land, and then and now had two windows on each story opening upon a four foot way between said premises and the premises now occupied by the defendants. At that time a one story wooden building nine feet and three inches in height was standing upon the premises now occupied by the defendants on the opposite side of the passage way, and so has remained until December 15, 1872 ; and since that time the defendants have removed the one story building, and have built a brick building two and a half stories high in the place thereof.

" The plaintiffs contend that the new erection of the defendants since the 15th day of December last deprives them of the light and air necessary for the reasonable enjoyment of their estate. The defendants insist that there is no implied grant of light and air in favor of the plaintiffs' estate under the deeds of Ebenezer T. Andrews and Henry Homes referred to in the bill ; and also deny that if there is any such implied grant, the erection complained of infringes thereon. It is agreed that the southeasterly line of the newly erected building of the defendants is at the same distance from the northwesterly line of the plaintiffs' building as was the one story wooden building standing upon the land of said Andrews at the date of his deed to Homes, the passage way between said lines being at all points four feet wide. The bill, answer, title deeds and plan annexed to the bill are all referred to. I reserve for the consideration of the full court the questions :

" First, whether any such implied grant of light and air as contended for by the plaintiffs exists in the present case.

" Second, if such implied grant exists, whether it sufficiently appears upon the bill, answer and facts agreed, that the defendants' erection of the new building does not infringe thereon.

" If it be found that no such implied grant exists, or if it sufficiently appears that said new building does not infringe thereon, the case is to stand for hearing only upon the question of the alleged infringement of the passage way ; otherwise the case is to be heard upon the question whether the present erection infringes upon the implied grant of light and air, as well as upon the alleged infringement of the passage way."

*D. Foster & J. P. Treadwell*, for the plaintiffs.

*W. G. Russell*, for the defendants.

GRAY, C. J. In each of these cases, the counsel have argued with learning and ability the question whether a person, who sells a house having windows overlooking land retained by him, thereby deprives himself of the right to build on that land so as to obstruct the passage of light and air to the windows. This question is presented in the simplest and most direct form in the case in Bristol. But as each of the justices who did not sit in that case was present at the argument of the same question in one of the cases in Suffolk, all the justices have taken part in the consultation, and the opinion now announced is the judgment of the whole court. The question being of great practical importance to owners of real estate, and having heretofore been the subject of some variety and conflict of judicial opinion, we have thought this a suitable occasion to review the cases in this Commonwealth, and to refer to the principal ones in other states.

By the common law of England, as declared by the English courts, a right to have light and air pass to the windows of a house over adjoining land might be presumed from long and continuous adverse enjoyment, unexplained, where the house and the land belonged to different persons ; and was granted by implication, if the owner of both house and land sold the house, retaining the land.

In *Story* v. *Odin*, 12 Mass. 157, which is the earliest American case, the law was stated in accordance with the English authorities. But it is to be observed that no suggestion appears

to have been made of any difference between the laws of the two countries in this respect, and that the facts of the case hardly required a decision upon the general question. The building sold to the plaintiff had not only windows, but a door, in each story, overlooking the vacant land retained by the grantor and afterwards sold to and built upon by the defendant; and the tenants of the first building and of other buildings surrounding the vacant land had been accustomed to use it, with the permission of the owner, as a passage way for the purpose of receiving goods into the buildings, and of depositing empty casks and boxes. The only objections made to the maintenance of the action were, 1st, that the plaintiff had not declared for an ancient and prescriptive right to the windows and doors; 2d, that the plaintiff purchased his building within twenty years; 3d, that the defendant purchased his land from the same grantor. Such were the circumstances under which a verdict was obtained for the plaintiff, and a motion for a new trial overruled.

The *obiter dicta* in *Thurston* v. *Hancock*, 12 Mass. 220, *Grant* v. *Chase*, 17 Mass. 443, and *United States* v. *Appleton*, 1 Sumner, 492, are based upon the English authorities and the case of *Story* v. *Odin;* and in neither of them was there any adjudication of the question. *Thurston* v. *Hancock* turned upon a question of the right of support. *Grant* v. *Chase* was a case of a right of way. *United States* v. *Appleton* was an action of trespass by the owner of land against his grantor for swinging a door over the land granted.

In the subsequent cases, the question of acquiring a right to light and air over the land of another by presumption or implication has been more fully considered on principle, and the constant tendency of judicial decision in this and most other states has been to deny the right. In no judgment of this court since *Story* v. *Odin*, has any right of light or air been upheld, except by express grant or agreement.

As early as 1818, in *Ingraham* v. *Hutchinson*, 2 Conn. 584, Judge Gould doubted whether the English rule had been adopted in this country; and pointed out the anomaly of holding that any right could be created by the existence of windows which did not project over or encroach upon the land of the adjoining proprietor. or in any way deprive him of the use of his land.

In 3 Dane Ab. 55, it is said : "This doctrine is vague and loose, the enjoyment must be *adverse.* What is adverse enjoyment? An enjoyment claimed as rightful by one party and denied by the other — or by mere silent acquiescence? What is to be understood by the expression *unexplained?* A., twenty years ago, built his house near the line of B.'s land, and made a window looking into it. B. since has pastured, mowed or tilled his land, and had no occasion to build on it; not a word has been said, or an act done by either party in regard to this window, a case of every day's practice. Is this a case *unexplained?* Or has A. *adversely* enjoyed his window?"

In *Parker* v. *Foote*, 19 Wend. 309, it was observed that in the case of ways, commons, markets, watercourses and the like, the use or enjoyment, if not rightful, has been an immediate and continuing injury to the person against whom the presumption is made, his property has been invaded or his beneficial interest in it rendered less valuable, the injury has been of such a character that he might have immediate redress by action, and therefore long continued acquiescence affords strong presumptive evidence of right. "But in the case of windows overlooking the land of another, the injury, if any, is merely ideal or imaginary. The light and air which they admit are not the subjects of property beyond the moment of actual occupancy; and for overlooking one's privacy no action can be maintained. The party has no remedy but to build on the adjoining land opposite the offensive window." "There is no adverse user, nor indeed any use whatever of another's property; and no foundation is laid for indulging any presumption against the rightful owner." "No one has trespassed upon his land, or done him a legal injury of any kind. He has submitted to nothing but the exercise of a lawful right on the part of his neighbor. How then has he forfeited the beneficial interest in his property? He has neglected to incur the expense of building a wall twenty or fifty feet high, as the case may be — not for his own benefit, but for the sole purpose of annoying his neighbor." And it was held that the English doctrine of acquiring a right to light by prescription was without foundation in principle, not adapted to the existing state of things in the United States, and could not be applied in the growing cities and villages of this country, without working the most mischievous consequences.

Like decisions have been made upon similar reasons in many other states. *Pierre* v. *Fernald*, 26 Maine, 436. *Napier* v. *Bul winkle*, 5 Rich. 311. *Cherry* v. *Stein*, 11 Md. 1. *Haverstick* v. *Sipe*, 33 Penn. State, 368. *Hubbard* v. *Town*, 33 Vt. 295. *Ward* v. *Neal*, 37 Ala. 500. *Mullen* v. *Stricker*, 19 Ohio State, 135, 142.

In *Atkins* v. *Chilson*, 7 Met. 398, and *Fifty Associates* v. *Tudor*, 6 Gray, 255, the objections to sanctioning the English rule as to acquiring a perpetual right of light and air by twenty years' enjoyment were raised, but not passed upon, because unnecessary to the decision in either case ; the first, which was a bill in equity by a reversioner for an injunction, being disposed of upon the ground that no irreparable injury was shown ; and the second, because it did not appear that the new wall, which was ten feet from the windows, substantially deprived them of light.

While the question remained unsettled by judicial decision in this Commonwealth, the legislature repeatedly restricted the acquisition of such rights. The St. of 1824, *c.* 52, provided that after the passing of that act no right should by lapse of time accrue to any person to have any privilege of air, light or way over the land of any other person who should have recorded and served a notice of his intention to prevent it. The Revised Statutes extended that provision to easements of every kind ; and also provided that "no person shall acquire any right or privilege of way, air or light, nor any other easement, from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless such use shall have been continued uninterrupted for twenty years." Rev. Sts. *c.* 60, §§ 27, 28. Each of those statutes, while it prevented the acquisition of the rights in question by lapse of time, except as therein mentioned, left the question whether they could be acquired by enjoyment under any circumstances, unaffected by legislation, to be decided by the law as it previously existed. The St. of 1852, *c.* 144, went further, and, still leaving it to the courts to determine how far rights of light and air had already been acquired, prevented their acquisition by mere enjoyment for the future, by providing that, except by written assent, "no person who has erected or may erect any house or other building near the land of any other person, with windows overlooking such land of such other person, shall, by the

mere continuance of such windows, acquire any easements of light or air, so as to prevent such other person, and those claiming under him, from erecting any building on such land." See also Gen. Sts. *c.* 90, §§ 32–35.

In *Rogers* v. *Sawin*, 10 Gray, 376, it was directly adjudged, that the mere open and unobstructed use of a window for more han twenty years before the passage of the St. of 1852, did not ntitle the owner of the window to an easement of light and air ; hat the fact that the window had a sill projecting over the neighbor's land did not alter the case, unless the owner had exercised some right, other than the mere ordinary use of the window for the admission of light and air, and working some wrong to the neighbor or depriving him of some beneficial right ; and that the common law of England upon this subject was not the common law of Massachusetts, for the reasons already given by the courts of other states, which Mr. Justice Metcalf summed up thus : " 1st. That the making of a window in one's building, on his own land, and overlooking the land of his neighbor, is no encroachment on his neighbor's rights, and therefore cannot be regarded as adverse to him ; 2d. That the English doctrine is not applicable to the state of things in this country, and would, if applied, work mischievous consequences in our cities and villages."

In *Carrig* v. *Dee*, 14 Gray, 583, it was held that the fact that a window was on hinges, swinging outward over the adjoining land, did not constitute such an adverse possessory use of that land, as to make any difference in the principle ; because, in the words of Chief Justice Shaw, " it was not such a use as to. en-. croach visibly or tangibly on the beneficial use and enjoyment of the land, over which such swinging window occasionally turned, or to diminish the owner's enjoyment, and so bring it within the principle that the law presumes that a man will not suffer another to make use of his property to his injury and inconvenience, and therefore presumes, if one man does make such use of another's property without objection on the owner's part, it is because he has a right by some instrument or grant, which is lost or cannot be produced."

So in *Richardson* v. *Pond*, 15 Gray, 387, (which in its leading facts curiously resembles *Story* v. *Odin*,) it was held that the pos·

session and use for more than twenty years of a window overlooking a neighbor's ·land, with shutters swinging over the land, created no easement of light and air, and gave no right to maintain an action for erecting a building on the land, except so far as it interfered with the right of swinging the shutters as incidental to a right to use the land for a passage way and for hoisting merchandise into the windows.

The steps have thus been traced by which it has come to be established as the law of this Commonwealth, that no right of light and air could be obtained by prescription. The cases bearing more directly upon implying a grant of such a right from a conveyance of a house remain to be considered.

In *Atkins* v. *Bordman*, 20 Pick. 291, and 2 Met. 457, the owner of two houses extending westwardly an equal distance from the street, and standing five feet apart, conveyed the lower one by a deed in which it was agreed that if the grantee should make any addition of building westwardly, he should not bring it nearer the other building; and it was held that he was not thereby restricted from raising the height of his own building, although by so doing he interrupted the access of light and air to the windows of the grantor's house.

In *Fifty Associates* v. *Tudor*, 6 Gray, 255, Chief Justice Shaw treated "an easement for light and air, derived from use and enjoyment, or implied grant," as governed, in either alternative, by the same considerations.

In *Collier* v. *Pierce*, 7 Gray, 18, the owner of two adjoining lots of land, on one of which was a building with a window in the wall close to the dividing line, overlooking the other lot, sold both by auction on the same day, and conveyed them·to the respective purchasers, with the privileges and appurtenances thereto belonging, but without expressing, either by the terms of sale or by the deeds, that any specific easement of air or light was granted or reserved to one over the other. It was held, that the purchaser of the lot on which the building stood acquired no right to light and air by implication over the other lot, although the sale and conveyance to him respectively preceded the sale and conveyance of the other lot; and Chief Justice Shaw distinguished the case from *Swansborough* v. *Coventry*, 9 Bing. 305 ; *S. C.* 2 Mo. & Sc. 362 ; upon the ground that in that case, by the word "lights," the right to lights, as they then actually existed, was expressly granted.

In *Randall* v. *Sanderson*, 111 Mass. 114, a house contained three windows, one in each story, which were the only means of lighting the rooms in which they were placed, overlooking the land adjoining. The house and land having been owned by one person, some of his heirs conveyed to the others the house "and all rights and privileges thereto belonging;" and on the same day all the heirs conveyed to a stranger the adjoining land, with a covenant against incumbrances. It was held that the grantee of the house took no easement of light and air over the land; and there is no intimation in the opinion that the decision would have been different if the deed of the land had not contained such a covenant, and had been made after the deed of the house.

In *Paine* v. *Boston*, 4 Allen, 168, which was a petition for damages for taking part of a lot of land for a street, the petitioner offered evidence that the lot was overlooked by ancient windows in an adjacent house, which the owner thereof claimed the right to maintain, and that the taking of part of the petitioner's lot made the right so claimed more injurious to the residue, than it had previously been. But this court, in the judgment delivered by Chief Justice Bigelow, held that the evidence was inadmissible, for the reason that a right to keep the windows open was not shown, "and never could exist except by actual grant."

In *Brooks* v. *Reynolds*, 106 Mass. 31, and *Royce* v. *Guggenheim*, Ib. 201, it was assumed to be the law of Massachusetts, that no right of light and air over adjoining lands could exist but by express grant or covenant. That proposition, though not in the strictest sense necessary to the decision of either of those cases, is yet involved in the course of reasoning by which they were decided, and seems to us to be a logical inference from the previous adjudications of this court.

In *Brooks* v. *Reynolds*, the question was of the right acquired under a deed which bounded the premises by a passage way, expressly agreed to be kept open for light and air, and particularly described. It was ruled in the Superior Court that the grantee took only the common law right of air and light; and that ruling was supported in argument here by reference to the case of *Fifty Associates* v. *Tudor*, 6 Gray, 255. But this court, referring to *Rogers* v. *Sawin*, *Carrig* v. *Dee*, and *Richardson* v. *Pond*, above cited, was of opinion that there was no such common law right in

this Commonwealth, and that the terms of the grant itself were therefore the only test of the extent of the right granted; and upon that ground held that the right was not limited to a protection against a substantial deprivation of air and light, and that the grantor could not build over any part of the passage way.

In *Royce* v. *Guggenheim*, the lessor of a house erected a building against the windows of two rooms therein, making them unfit for use. The tenant relied on this as an eviction; and, in an action brought against him for rent, obtained a verdict. It was considered by the court, that if the new building was erected upon land not included in the lease, and for the purpose of improving that land, it was a lawful act, which violated no obligation of the lessor to the lessee; and the plaintiff's exceptions were overruled, solely upon the ground that they did not show that the new building was not upon the demised premises.

By nature, air and light do not flow in definite channels, but are universally diffused. The supposed necessity for their passage in a particular line or direction to any lot of land is created not by the relative situation of that lot to the surrounding lands, but by the manner in which that lot has been built upon. The actual enjoyment of the air and light by the owner of the house is upon his own land only. He makes no tangible or visible use of the adjoining lands, nor indeed any use of them which can be made the subject of an action by their owner, or which in any way interferes with the latter's enjoyment of the light and air upon his own lands, or with any use of those lands in their existing condition. In short, the owner of the adjoining lands has submitted to nothing which actually encroached upon his rights, and cannot therefore be presumed to have assented to any such encroachment. The use and enjoyment of the adjoining lands are certainly no more subordinate to those of the house where both are owned by one man, than where the owners are different. The reasons, upon which it has been held that no grant of a right to air and light can be implied from any length of continuous enjoyment, are equally strong against implying a grant of such a right from the mere conveyance of a house with windows overlooking the land of the grantor. To imply the grant of such a right in either case, without express words, would greatly embarrass the improvement of estates, and, by reason of the very indefinite

character of the right asserted, promote litigation. The simplest rule, and that best suited to a country like ours, in which changes are continually taking place in the ownership and the use of lands, is that no right of this character can be acquired without express grant of an interest in, or covenant relating to, the lands over which the right is claimed.

In accordance with these views, the English doctrine of implied grants of rights of light and air has been wholly rejected in several well considered cases. *Palmer* v. *Wetmore*, 2 Sandf. 316. *Myers* v. *Gemmel*, 10 Barb. 537. *Haverstick* v. *Sipe*, 33 Penn. State, 368. *Mullen* v. *Stricker*, 19 Ohio State, 135. *Morrison* v. *Marquardt*, 24 Iowa, 35. And with the single exception of *Janes* v. *Jenkins*, 34 Md. 1, all the opinions of American judges, with which the learning and research of counsel have supplied us, in favor of the acquirement of such a right by mere implication from the conveyance of a house, have been either, as in *Lampman* v. *Milks*, 21 N. Y. 505, 512, *obiter dicta*, or, as in *Robeson* v. *Pittenger*, 1 Green Ch. 57, in those states in which a like right is held to exist by prescription, and therefore of no weight as authority in this Commonwealth.

Considering therefore that by the preponderance of reason and of authority no grant of any right of light or air over adjoining lands is to be implied from the conveyance of a house, we have only to apply this rule to the facts of the cases pending before us.

In the case of *Keats* v. *Hugo*, the action, being merely for the interruption of the access of light and air to the plaintiff's windows and door by building on the defendants' own land, cannot be maintained, and there must be

*Judgment for the defendants.*

So in the case of *Eaton* v. *Evans*, the deed made by the administrator of Sarah Davies, under a license of court to sell for the payment of debts, conveys by metes and bounds a parcel of land and the house upon it, without any mention of windows, light or air. Assuming (without deciding) that this deed had the same effect as a like conveyance from an owner in fee of the same house and land, no grant of any right of air and light over the adjoining lands can be implied. And the deed by which the defendant derives his title does not admit the validity of any claim of such a right.

The boundary of the plaintiffs' lot is shown by the terms of the deeds, and the actual occupation of the parties and of those under whom they claim title, to be the line of the wall of the plaintiffs' house. The fact that the eaves and cornices thereof projected over that line gave them no title to the land, and no right to prevent the defendant, owning that land, from erecting any building upon it, so long as he did not cut off or interfere with the eaves or cornices of their house. *Randall* v. *Sanderson*, 111 Mass. 114.

The plaintiffs therefore fail to show any claim to the interference of a court of equity, and their bill must be

*Dismissed with costs.*

The same considerations dispose of the case of *Salisbury* v. *Andrews*, and show that no right of light and air whatever was granted by the deed of Andrews to Homes. That case must therefore, according to the terms of the report,

*Stand for hearing as to the right of way only.*