# HUTCHINS *v.* MUNN.*

EASEMENTS OF LIGHT AND AIR; PAROL AGREEMENTS; BUILDING PERMITS;
PARTY WALLS.

1. An easement of light and air is an interest in land, which, in general,
can only be created by grant, although under certain circumstances of
part performance or estoppel *in pais,* such an easement, resting in
parol only, may be enforced in equity.

2. Where H., the owner of a city lot, upon the voluntary parol agreement
of W., who owned the adjoining lot, which was partly covered by a
dwelling house, that his side yard which was immediately adjacent to
H.'s lot, should be kept open for purposes of light and ventilation
to both premises, built a house on his lot with windows opening upon
such side yard, one of the walls of the house being built partly on W's.
lot in accordance with the building regulations governing party walls,
and W. subsequently conveyed his property to M., whose deed con-
tained no reservation of such an easement, although he knew of the
existence of the windows in H's. house opening on the yard,—such
parol agreement cannot be said to have been partly performed by H. by
his erection of the party wall, and an injunction will not lie at his suit
to restrain M. from building an addition to his house covering a por-
tion of such side yard and so obstructing H.'s windows,—especially
where it appears that M., after his purchase, had built other additions
covering a portion of the yard, without objection by H., utilizing a
portion of the party wall, and paying H. for the portion so used.

3. A right to an easement of light and air cannot be acquired by prescrip-
tion or adverse user, in this country.

4. Where the owner of a city lot, a woman, has let a contract for building
thereon, and construction thereunder has been begun in strict accord-
ance with a building permit issued by the municipal authorities, an
adjoining lot owner, who has sustained no legal injury by reason of
such construction is not entitled to an injunction restraining it on the
grounds that the application for the permit was made by, and the per-
mit issued to, the husband of the owner, instead of to her, and that
the permit allows a construction in violation of a provision of the
building regulations, requiring that 10 per cent of the lot be left free
from all construction, for purpose of light and ventilation.

*Light and Air.*— As to the American law relating to easements of light,
air, and prospect, see the presentation of the authorities in the editorial
note to *Case* v. *Minot,* 22 L. R. A. 536.

D. C.]                    Statement of the Case.

5. One who desires to use a party wall built partly on his lot and partly on his neighbor's lot, in accordance with the building regulations of this District, may use the wall for the whole or a part of its length, paying for the portion he uses; or he may use it all, and prolong it in either direction, within the limits of the regulations.

No. 1274.    Submitted April 21, 1903.    Decided May 6, 1903.

HEARING on an appeal by the complainant, specially allowed, from an order of the Supreme Court of the District of Columbia dissolving a temporary injunction and discharging a rule to show cause why a permanent injunction should not be granted, in a suit in equity to restrain the erection of an addition to a dwelling house on a lot adjoining that of the complainant.    ° *Affirmed.*

The COURT in the opinion stated the case as follows:

A special appeal has been allowed in this case from an inter-locutory order dissolving a restraining order, and discharging a rule to show cause why an injunction should not issue restraining the appellees from erecting an addition to a building on a lot adjoining that of appellant.

Without reciting the allegations of the bill and answer, it is sufficient to say that the decision of the question turns upon the following facts, which appear without substantial contradiction or dispute:

In August, 1882, the complainant, Stilson Hutchins, became seized and possessed of sublot No. 142 and part of sublot No. 4, in square No. 181, in the city of Washington, upon which, short-ly thereafter, he erected a costly dwelling house, having three stories and a basement. The house fronts south on Massachusetts avenue, and is numbered 1603. At that time the adjoining lot on the east, which abuts on Massachusetts avenue and Sixteenth street, was owned in fee by William Windom, since deceased. This lot, designated as sublot No. 141 in square 181, has a frontage of about 61 feet, on Massachusetts avenue and a depth of 66 feet, extending along Sixteenth street, which intersects the aforesaid avenue at an acute angle. This lot was then occupied by a dwelling house which did not cover

it entirely, but left an open space adjoining the lot subsequently purchased by Hutchins of the average width of 12 feet 6 inches. In erecting his house Hutchins built the eastern wall thereof partly on the Windom lot in the nature of a party wall, as provided for in the District building regulations. This wall covered the dividing line between said lots from the northwest corner of the Windom lot for a distance of 28 feet, then it deflected from the straight line and formed two re-entrant angles, one larger than the other. The building terminated with a semicircular bay-window, the extreme southeastern part of which extends a few inches over the dividing line aforesaid, and the whole overlooked the vacant space on the adjoining lot. The bay-window lacks some 12 feet or more of extending to the Massachusetts avenue building line. The easement of light, air, and prospect claimed by Hutchins is thus stated in his bill.

"Prior to the erection of said dwelling by your complainant, it was expressly understood and agreed between your complainant and William W. Windom, the then owner of sublot No. 141, in square No. 181, that the area or space for which a permit has now been issued, and upon which the defendants are now building the addition hereinafter referred to, should be forever kept free and clear from all buildings, additions, structures, or coverings of any kind or character, in order that the necessary light and ventilation might be preserved to the premises of your complainant and said Windom."

On April 18, 1888, the said William Windom, and wife, for a consideration of $70,000, conveyed said sublot 141, in square No. 181, to Carrie L. Munn in fee simple. Said deed contains no reservation of any nature for the benefit of the adjoining lot.

The answers of the defendants deny knowledge of any agreement or contract between Hutchins and Windom relating to the easement as alleged in the bill at the time of the conveyance aforesaid. Nor is there any allegation in the bill that they had actual knowledge thereof. After her purchase of the property, Mrs. Munn built two one-story additions to her house (billiard room and conservatory) on the northwest corner, and in so doing used and paid for so much of the party wall aforesaid as was

needed therefor.   This left a vacant space fronting Massachu-setts avenue, 12 feet 6 inches wide and 34 feet deep.   Upon this space she obtained a permit from the District authorities to erect a brick three-story and basement addition, 12 feet 6 inches wide and 25 feet deep.   It is the erection of this addition which the complainant alleges will "substantially destroy all light and ventilation to the pantry in the dwelling of your complainant, as well as partially closing the window in his dining room and the windows in the two rooms in the second and third stories of his said dwelling on the east side thereof, and in many other respects operate to injure his property aforesaid, as well as result in a grievous nuisance to your complainant."

The formal building permit for the erection of the building complained of was issued to C. A. Munn, the husband of Carrie L. Munn, the owner, on July 29, 1902.   The application there-for was signed by C. A. Munn also.   By the terms of the regu-lations a building cannot be erected upon a city lot without such a permit, which may be issued to and upon the application of the owner.

As an additional ground for restraining the erection of this proposed addition to the house of Mrs. Munn, the bill charges that the permit is invalid because neither applied for nor issued in the name of the real owner; and further, because the per-centage of air space required by the regulations for the proper ventilation of the lot built on has not been reserved.   The pro-posed construction of the appellees also prolongs the party wall originally constructed by Hutchins some 12 or more feet towards the building line of Massachusetts avenue.   One half of said wall, consequently, stands upon the lot of Hutchins.

Ground plan, attached as an exhibit to appellant's bill of complaint showing proposed construction of appellee:

*Total area 4020 Sq. ft. of Munn's lot.*

*Area space on 16ᵗʰ st. 9'6" X 4'0" being the only light or air space left if this proposed addition is granted.*

*Hutchins' Residence*

*Building Line*

*Proposed Addition*

*Munn's Residence*

*Party Line*

Filed, AUGUST 14, 1902.

*Exhibit No. 1*

14

EXHIBIT H. & L. No. 5,
Filed, AUGUST 27, 1902.

Plat showing Party
Line between lots
141 & 142, Square 185.

Edison Hutchins

Face of wall above
1st story window sills

Face of wall below
1st story window sills

G. A. Munn

Lot 142

Lot 141

16th St.

Mass Ave

*Mr. Jefferson Chandler, Mr. Clarence A. Brandenburg, Mr. Edwin C. Brandenburg,* and *Mr. F. Walter Brandenburg,* for the appellant:

1. The various amendments to the building regulations, made immediately prior to the issuance of the permit to the appellee's husband, did not affect the following provision found at the end of § 33, and which broad provision is still in full force and effect: "No building mentioned in this section, now or hereafter erected, shall be altered or enlarged to encroach upon space reserved for light and ventilation, either on the same or on adjoining premises." The issuance of the permit contravened this regulation, and therefore the appellees proceeded without authority to make this addition. See Washb. Easem. 574; *Schafer* v. *Baker,* 16 App. D. C. 214.

2. Easements apparent are those the existence of which appear from the construction or condition of one of the tenements, and are capable of being seen or known on inspection. 10 Am. & Eng. Enc. Law, p. 405; *Fetters* v. *Humphries,* 18 N. J. Eq. 262; *Larson* v. *Peterson,* 53 N. J. Eq. 52; *Lempman* v. *Milks,* 21 N. Y. 507; *Pyer* v. *Carter,* 1 Hurlst. & N. 920. If the facts are such as to put a purchaser of property upon inquiry, a parol easement is sufficient (*Harrison* v. *Boring,* 44 Tex. 263), and the deed need not mention the easement. *Ross* v. *Thompson,* 78 Ind. 98; *Morgan* v. *R. Co.* 96 U. S. 716-721. See also *Frizzell* v. *Murphy,* 19 App. D. C. 440; *McPherson* v. *Acker,* MacArth. & M. 150; *Lampman* v. *Milks,* 21 N. Y. 505. For the rule as to the right of access to light and air, in case of an owner of adjacent lots, see *James* v. *Jenkins,* 34 Md. 1.

3. The plaintiff claims that, after building his house in sympathetic relation to the house on the adjoining lot, under plans agreed upon by the owners thereof, a status and predicament of the property was thereby created, which status entered into its value, and that such status or predicament, being itself property, cannot be disturbed by an *ex parte* proceeding had before the building authorities by the grantee of one of the pieces of property. That a disturbance of such status, condition, and predicament, which are elements of value in the property itself,

cannot be overthrown or repealed without violating due process of law, seems well established. *Dunlop* v. *Mobley,* 71 Ala. 105 ; *Ayling* v. *Kramer,* 133 Mich. 13 ; 13 Anderson Law Dict. 221 ; *United States* v. *Cole,* 18 D. C. 504.

4. The commissioners, having once refused to grant the permit to appellee, had no authority whatever to attempt to amend the regulations to meet the very contingency which doubtless arose by reason of the application for the very permit in controversy. A rule ceases to be a rule if it may be indiscriminately amended to suit every emergency that may arise. The right to amend a regulation or a rule is conceded, but it is respectfully submitted that this right does not exist when the evident purpose is to meet thereby a contingency such as arose in the present case. Indeed, it has been held that a tribunal has no jurisdiction to decide the same controversy two different ways. *Oneida Court* v. *People,* 18 Wend. 100. See also *United States* v. *Cole,* 18 D. C. App. 504.

For the protection of health and the welfare of the public, the commissioners provided that there should be reserved an air space of 10 per cent of the area of each lot. The propriety of such regulation cannot be questioned. *Townsend* v. *Epstein,* 93 Md. 555. It is submitted that while the amendment of the regulations purports to be for the public good, the only presumption that can be drawn from the various amendments is that, having been made after the rejection of the first application for a permit, the purpose was to meet the particular contingency which arose in this case.

5. The appellant has a right to object to the fact that the appellee is erecting his addition contrary to the building regulations. *First Nat. Bank* v. *Sarlls,* 129 Ind. 201; *People's Gas Co.* v. *Tyner,* 131 Ind. 277; *Garritee* v. *Mayor,* 53 Md. 422; *Townsend* v. *Epstein,* 93 Md. 555.

6. A party wall is for the common use; the extent of the use is settled by the parties. A party wall is defined by the building regulations of 1902 to be a wall built upon the dividing line between adjoining premises, for their common use. It is not only a divisional wall, but it is limited to such walls as are for a

common use. *Houston* v. *De Zeng,* 78 Mo. App. 523; *Hammann* v. *Jordan,* 9 N. Y. Supp. 423; *Watson* v. *Arnold,* L. R. 8 Ch. 1090.

Such a wall is defined in and limited by the plans submitted calling for a party wall and put of record. Such plan, showing the party wall and the permit to build resting thereon, is a matter of permanent record. Regulations of 1902, p. 22, § 55. The plans submitted as the basis of the permit to build contiguous buildings, showing a party wall therein, constitute the party wall for that particular building. Such a wall being once built, there is no authority under the regulations to alter or extend it at the expense of light and air. Party walls, in contemplation of the regulations, are walls to be built on improved lots, and not walls thereafter extended from such walls. See page 52, § 62 of the regulations of 1902. This interpretation is sustained by *Kraft* v. *Scott,* 1 H. & H. 33. The building regulations of 1791, allowing an entry upon adjoining premises for the purpose of building a party wall applies only to vacant lots. There is no such thing as a party wall known to the common law (22 Am. & Eng. Enc. Law, p. 242) but it may exist by statute irrespective of consent (*Fowler* v. *Saks,* 18 D. C. App. 570) and may, of course, exist with the mutual consent of the owners, based on contract. Owners of adjoining lands may, by agreement, notwithstanding building regulations, contract for the erection of a wall standing partly on the lands of each. *Irindge* v. *Baker,* 57 N. Y. 209; 22 Am. & Eng. Enc. Law, p. 240. When built under contract, and not under statute, regulations cannot change it. It is also true that an agreement that a wall shall be a party wall may be implied from the conduct of the parties. *Dowling* v. *Hennings,* 20 Md. 179. An executed contract for a party wall need not be in writing. An executory parol agreement for the erection of a party wall is void as being within the statute of frauds, requiring all agreements relating to any interest in land to be in writing, but when, under such a contract, the wall has been erected, the contract is no longer within the statute as between the parties who have already received its benefits, and one of them having promised to con-

tribute to the cost of its erection and having used the wall, is bound to contribute. A partly executed contract for a party wall is not within the statute. *Stuht* v. *Sweezy,* 48 Neb. 767; *Rice* v. *Roberts,* 24 Wis. 461, 1 Am. Rep. 105; *Pireaux* v. *Simon,* 79 Wis. 392. A parol contract for a party wall is good (18 Am. & Eng. Enc. Law, p. 5; *Brooks* v. *Curtis,* 50 N. Y. 643; *Musgrave* v. *Sherwood,* 60 How. Pr. 367; see brief, 60 How. Pr. 343-345).

7. The agreement between appellant and Windom is as good as though in writing when performed. 10 Am. & Eng. Enc. Law, p. 413. An owner of land may create an easement therein by parol agreement acted upon by another, in respect of which money has been expended. *Harrison* v. *Boring,* 44 Tex. 256. An easement is a burden impressed upon one tract of land for the benefit of another. 44 Tex. 267. And if created by parol in respect of party walls runs with the land. *Rawson* v. *Bell,* 46 Ga. 19. Land sold by plat showing an easement binds the purchaser. 10 Am. & Eng. Enc. Law, 2d ed. p. 414.

8. The restraining order should not have been dissolved. An injunction will lie to prevent a threatening danger to a probable right. *Gas Co.* v. *Memphis,* 72 Fed. 952. The fact that the question for hearing was serious, and if established would entitle the complainant to relief, warranted the court in sustaining the injunction until the hearing (2 High, Inj. 1590), which is peculiarly true where the equity of a case is in doubt (2 High, Inj. 1605). It is not merely sufficient to deny the equities in the bill in order to secure the dissolution of the injunction, since if the equity is in doubt the injunction should be staid until the hearing (2 High, Inj. 1007), and in any case the burden of proof on a motion to dissolve is on the defendants. *Edison* v. *Buckey,* 59 Fed. 691.

In order to dissolve an injunction once granted, the motion therefor should be explicit and definite in the statement of the reason on which the dissolution is asked. (High, Inj. 1001, 1002), and if there are two persons bound and enjoined, the answer of one of such persons only is not sufficient to justify the

dissolution. High, Inj. 1003. In the case at issue the most important defendant does not answer.

9. Where one has been induced to build his house to accommodate certain conceptions of the value of light and air on his part, and on that of the adjoining owner, those accepted conceptions agreed upon are property, and cannot be disregarded by the court. (*Banks* v. *American Tract Soc.* 4 Sandf. Ch. 438), and what Mr. Windom could not do with his own property he could not convey a right to do to a stranger. *Story* v. *Odin,* 12 Mass. 157; *Back* v. *Stacey,* 2 Car. & P. 465. The plaintiff in this case is claiming the benefit of the doctrine of prescriptive light and air as evidence to confirm his agreement that he should enjoy certain areas of light and air, which agreement is plead and admitted in the record, hence there is not present in this case the sharp question of whether the doctrine of ancient lights prevails in the District of Columbia, but whether a contract in respect of light and air fully executed by the parties thereto and approved can be maintained.

*Mr. Samuel Maddox* and *Mr. H. Prescott Gatley* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The general and rather vague terms in which the alleged agreement with Windom is stated in the bill indicate what was practically conceded on the argument, that it was a verbal agreement or understanding only. That being the case, the agreement itself, even had express notice of it been brought home to Mrs. Munn before her purchase, created no restriction upon the fee-simple title vested in her by the conveyance from Windom. By the overwhelming weight of American authority, an easement of the nature of that claim constitutes an interest in the land, and must be evidenced by writing duly executed. See 10 Am. & Eng. Enc. Law, pp. 409, 411; 19 Am. & Eng. Enc. Law, p. 114, where the decisions have been collated.

It is doubtless true that there may be cases in which a parol

agreement conferring an easement or creating a servitude—when formed by one party in a manner and to an extent effecting a radical change of his relations in respect of the subject-matter, so that the subsequent refusal of the other party would work an injury substantially remediless at law—may be enforced in equity, though not binding at law, in accordance with the well-established principles of the doctrines of part performance, or estoppel *in pais.*

But no such conditions are shown in this case. It does not appear that any consideration whatever passed to Windom for his alleged agreement to maintain the side yard, or open space, upon his lot for the benefit of the complainant. It is not alleged that the wall partly erected on Windom's lot was constructed for his benefit or advantage in any particular; on the contrary, any possibility of value or advantage accruing to him thereby is precluded by the agreement as alleged which made it impossible for him to utilize any part of the wall for improvements upon his premises.

The mere erection of this wall, partly upon Windom's lot, was clearly not in part performance of the alleged agreement by which the latter surrendered his right to erect any structure upon the remaining portion of his own lot. If the complainant had had no right to erect the wall partly over the line of Windom's lot, then the consent of the latter thereto, or even his acquiescence, with full knowledge, might be sufficient to estop him and his grantees to demand its removal.

However this might be, it would afford no ground for an estoppel to the exercise of the undoubted right of dominion over the remainder of his lot. But the right of the complainant to build his house wall partly across the division line of the lots was in no respect dependent upon the consent or acquiescence of Windom. It was given by the plain terms of a section of the building regulations that had been in force in the city of Washington since October 17, 1791, the authority for the enactment of which has a peculiar foundation.

In the conveyance by the original proprietors to the commissioners for the foundation of the capital city, it was declared that

the property so conveyed should be subject to such terms and conditions as should be thought reasonable by the President for the time being for regulating the material and manner of the buildings on the lots generally in said city, or in particular streets or parts thereof, for common convenience, safety, and order; provided such terms and conditions be declared before the sale of any of the said lots.

On October 17, 1791, and before the sale of any lots under the terms of the grant to the commissioners, President Washington promulgated the rule respecting party walls that is embodied in § 62 of the regulations as re-enacted and amended. *United States ex rel. Strasburger* v. *District of Columbia,* 5 Mackey, 389, 394; *Priest* v. *Talbott,* 16 App. D. C. 422, 424.

Section 62 further provides that "the first builder shall be reimbursed one moiety of the charge of such party wall, or so much thereof as the next builder shall have occasion to make use of, before such next builder shall in any way use or break into the wall, the charge or value thereof to be set by the person or persons so appointed by the commissioners." As the wall was built under a permit from the commissioners, and occupied no more space than the regulations authorized, Windom was powerless to prevent its erection, and his apparent acquiescence can be regarded as nothing more than an unquestioning acquiescence in the enforcement of the law. But no matter what might have occurred as between Hutchins and Windom in regard to the construction of this wall, Mrs. Munn had no actual notice of anything affecting the title which she acquired. All the notice that can be imputed to her is that of the existence of a party wall with its legal incidents and nothing more.

It appears without contradiction, as we have seen, that she subsequently utilized a part of this wall in the erection of two small additions to her building, and paid the complainant, who seems to have raised no objection to the construction, for so much as was used, in compliance with the provisions of the regulation relating to party walls.

2. The fact that in erecting his house the complainant provided certain windows overlooking the then unoccupied ground

of the Windom lot, without objection by or with the acquiescence of Windom, invested him with no easement in said space for the enjoyment of light and air by means of said windows.

Even if the grant of such an easement might, under some circumstances, be implied,—a question not necessary to be determined,—the foregoing are clearly insufficient for such purpose.

Whilst the location of the windows is not made clear by the allegations of the bill, it would seem that they open upon the space of the complainant's lot made by the re-entrant angle heretofore mentioned in the description of the wall of his house. Neither Windom nor his grantee could have prevented the insertion or maintenance of these windows; nor had they any right of action against him for thus overlooking their private grounds. In such case "the party has no remedy, if he is not guarded in his privacy by deed or contract, but to build on the adjoining land opposite the offensive window." *Schafer* v. *Baker,* 16 App. D. C. 213, 222.

Even had the complainant, by means of those windows, enjoyed the benefit of continuous, unobstructed passage of light and air across the open space on the adjoining lot for a period of more than twenty years, he would not be entitled to claim an easement therein by prescription or presumption of grant. The authorities in this country are practically unanimous in holding that no such easement can be thus acquired. 19 Am. & Eng. Enc. Law, p. 118.

But were it conceded that, by his acquiescence in or express consent to the erection and enjoyment of windows overlooking his vacant ground, the grant of an easement might have been raised by implication or estoppel as against Windom, his grantee, without restriction or notice, could not be bound thereby. The mere existence of the windows in the adjoining house, at the time of the conveyance to Mrs. Munn, was not sufficient to put her upon notice of the grant of the perpetual easement that is claimed.

It would seem that, by the weight of American authority, one who erects a house upon a lot belonging to him, with windows overlooking an adjoining vacant lot and receiving light and

air across the same, and then conveys to another, is not thereby precluded from building on the adjoining lot, whether before owned or subsequently acquired, in such way as to intercept the passage of air and light through said windows. *Keats* v. *Hugo,* 115 Mass. 204; 15 Am. Rep. 80; *Cherry* v. *Stein,* 11 Md. 1, 24; 19 Am. & Eng. Enc. Law, p. 115. The foregoing doctrine is not, however, involved in this case, and is referred to merely by way of illustration.

3. An additional contention of the complainant is founded on the alleged violations of the provisions of the building regulations in the matter of granting the permit under which the work of construction upon the lot of Mrs. Munn had been carried on. These are, first, that the application was made by Charles A. Munn instead of by his wife, the real owner; second, that the permit was issued to him and not to her; and third, that the permit fails to preserve at least 10 per cent of the lot and premises free from all construction from ground to sky for the purposes of light and ventilation, as is required by § 33 of the said regulations.

It would seem that, notwithstanding the new construction as permitted, the facilities for light and ventilation on the premises of Mrs. Munn fully satisfy the requirements of the building regulations as amended before the issuance of the permit. But be that as it may, the complainant, having, as we have seen, sustained no legal injury through the construction on the adjacent premises, has no foundation upon which to raise the question of the sufficiency of light and air in so far as those premises alone are concerned, or one relating solely to irregularities in the proceedings to obtain the requisite permit from the District authorities.

The contract for the building having been let by the owner of the premises, and construction thereunder begun, the permit, though issued upon the application of her husband and in his name, would bind the public authorities themselves, unless in an action instituted by them they would be able to show a clear case of departure from its terms, or danger to public interests of which they are the lawful conservators. *Dainese* v. *Cooke,* 91 U. S. 580, 583, 23 L. ed. 251, 252.

4. It appears from the pleadings and the ground plan of the proposed construction attached thereto as an exhibit, that the western wall of Mrs. Munn's addition stands in part upon the lot of complainant for a portion, if not all, of the distance between the corner of his house and the building line on Massachusetts avenue. This extension, of from 10 to 15 feet, is a prolongation of the wall erected by the complainant in the construction of his own house, and occupies no more space than is permitted by the regulation providing for the erection of party walls. The validity of the regulation permitting the owner of a lot to erect the wall of his building partly upon the adjoining lot of another to the street building line is not denied; but the complainant contends that where there has been a construction by either party, for a portion of this distance, the power under the regulation is thereby exhausted, and further construction on the same line becomes dependent upon consent. We can not accede to this view. The right to erect such a division wall between adjoining premises of diverse ownership is distinct in each, and runs with the title in its changes. Such being the case, its exercise can not be determined by the act of one party without some form of binding consent on the part of the other. When one builds a party wall in the execution of a permitted plan of improvement upon his own lot, he may regulate its length at pleasure. The adjacent owner is not concluded by the other's choice, but may build at his own pleasure, within the limitations of the public regulations. In doing so he may use the wall of his neighbor for the whole or a part of its length, and may prolong it in either direction. If he uses no part of it he is not compelled to pay any portion of the cost of construction. If he uses a part only, he must first pay a corresponding portion.

It will not be claimed that the regulation in express terms requires that he shall exercise his election once for all. Necessarily it must have occurred time and again since the first promulgation of the regulation, and will likewise occur in the future growth of the city, that an owner, owing to limited means or other controlling conditions, would build a small house at

first and use but a limited portion of a ready constructed party wall. Subsequently, he, or his successor in the title, might find it necessary or desirable to extend the old building, or substitute it with another of greater size.

On the other hand, the first builder might be immediately followed by the adjoining owner with a prolongation of the wall in the construction of a larger building. To say, in either case, that the power to build an additional party wall without mutual consent has become exhausted would be an unreasonable restriction, the intent to create which ought plainly to appear in the words of the regulation.

The decision upon which the appellant relies in support of his contention is founded on a very different state of facts. *Calmelet* v. *Sichl,* 48 Neb. 505, 67 N. W. 467. There in the absence of a party wall regulation, one was built by mutual agreement for houses of three stories in height. Subsequently, one of them, without the consent of the other, commenced to raise the wall one story higher, and an injunction was granted to prevent it. He had no right to use the wall beyond the terms of his contract.

Though the complainant may suffer great hardship through the cutting off of light, air, and view heretofore freely enjoyed, that fact alone can not justify a court of equity in restraining the adjoining owner from the exercise of lawful dominion over his own property. The decree must therefore be affirmed, with costs; and it is so ordered.                    *Affirmed.*