.John Lengyel and Julius Debrovsky

*v.*

Julius Meyer et ux. and Jesse Lobsenz.

[Decided December 28th, 1905.]

· Where a deed with full covenants of warranty conveyed certain property, including a party wall containing windows overlooking defendant's adjoining property, and provided that such wall should remain a party wall, and that both parties should be entitled to rights therein, the grantee in the deed acquired an easement over such adjoining property of the right to keep such windows open and receive light and air therefrom, which was determinable only on the use of the wall for building purposes by the adjoining property owner.

On bill, answer and proofs.

*Mr. Harry Meyer* and *Mr. Peter Backes,* for the complainants.

*Mr. David H. Bilder,* for the defendants.

Stevenson, V. C.

1. The allegations in the bill, to the effect that the covenant in relation to the party wall was fraudulently inserted in the deed to the complainants without their knowledge or consent, are not only not proved to be true, but are proved to be false. Counsel for complainants on the argument abandoned all claim that the deed from Julius Meyer to the complainants should be reformed so as to excise the above-mentioned covenant. The claim of the complainants in this cause remaining for consideration is confined to the question whether, under the facts proved, allowing the deed to stand unimpeached on the ground of fraud, and containing this covenant relating to the party wall, the complainants are entitled to an injunction against the defendant Lobsenz.

2. In December, 1899, the complainants were the equitable

owners of a lot in the city of Passaic, twenty-five by one hundred feet, situate on the corner of Second and Bergen streets. Their title was created by an agreement with one Samuel Weinberger, who in turn held a similar agreement with Julius Meyer, the then owner of the property. The lot was covered for a distance of ninety feet from the front by a four-story brick building. Julius Meyer, from whom this equitable title in the complainants had come, was the owner of a lot twenty-five by one hundred feet, adjacent on the south to the lot which the complainants had contracted to buy. This adjacent lot was vacant except so far as it was occupied by the small one-story building hereinafter mentioned. As a matter of fact, the southerly wall of the brick building, throughout its entire length, extending back ninety feet from Second street, rested almost equally upon the complainants' lot and the lot retained by Julius Meyer. The stone foundation wall is two feet thick. For a certain height the brick wall resting upon the stone foundation is sixteen inches thick and the upper portion of the brick wall is twelve inches thick. The position of the wall and its thickness, which is quite beyond the requirements of a single building, indicate that it was constructed by Mr. Meyer as a party wall, to be used for the purposes of a building on each lot. The first story of the complainants' building was constructed for use as a store or place of business, and is now used for such purpose. The three upper stories are divided into apartments for families. In order to supply light and air to the apartments situate on the southerly side of the building, as the bill alleges,

"the said Julius Meyer caused to be constructed in the southerly wall of the said building twenty-two windows overlooking the adjoining premises belonging to the said Meyer, and at the same time the said Meyer caused to be erected and constructed on the adjoining property on the south a one-story brick building to be used, and which is now used, for store purposes."

The proofs show that, with all these windows opening upon his practically vacant lot, Julius Meyer agreed to sell the corner lot, with its building, and the equitable title created by this agreement became vested in the complainants. The contract

between complainants and Samuel Weinberger under which the complainants acquired their title expressly provides for the conveyance of the land "with the building thereon erected," and further provides that, upon the stipulated payments being made, Weinberger would procure a proper deed, to be made by Julius Meyer, conveying the property to the complainants free from all encumbrances, with full covenants, including warranty. Whether the contract between Meyer and Weinberger was the same, *mutatis mutandis,* as the contract between Weinberger and the complainants it is unnecessary to inquire, on account of the subsequent carrying out of both contracts.

When the complainants made their contract with Weinberger, upon which they made a substantial payment, they supposed that the entire wall rested upon the twenty-five-foot lot which by the contract they were to acquire. Their counsel, however, discovered what the situation of the wall was, and thereupon he informed the complainants, and a survey was made which showed all parties the true location of the wall—that the wall stood manifestly as a party wall. What relief the complainants would have been entitled to in a court of equity on the ground of mistake or on the ground of fraud if they had made complaint immediately upon making this discovery we need not discuss. Nor need we discuss the nature and extent of the rights which the complainants and Julius Meyer, respectively, would have enjoyed in respect of this wall, and particularly in respect of the windows therein, in case the deed from Julius Meyer to the complainant had followed the agreement and had conveyed the corner lot, twenty-five feet by one hundred, with the brick building erected thereon. What the complainants might have done, what rights they would have enjoyed, whether the complainants did or did not place themselves in a worse position by accepting the deed which finally they did accept, or whether that deed, with its covenant in reference to the party wall, merely expressed what would have been implied in case such covenant had not been inserted in the deed—these are all questions which may be dismissed without consideration.

What the parties, with full knowledge of the facts, did was

this: They met with counsel and an interpreter, and the result was that the deal was closed and the warranty deed from Julius Meyer to the complainants was delivered, to which deed, however, was added the following covenant:

"It is hereby stipulated and agreed by the said parties, for themselves, their heirs, executors, administrators and assigns, that the wall on the southerly side of the building on the lot herein conveyed, which wall is sixteen inches wide at the first story, eight inches on the lot herein conveyed and eight inches on the lot adjoining, and twelve inches above the first story, seven and one-half inches on the lot herein conveyed and four and one-half inches on the lot adjoining, shall be a party wall, and both parties entitled to rights therein, the party of the first part owning the said lot adjoining."

Subsequently Julius Meyer conveyed the vacant lot to the defendant Lobsenz, who confessedly occupies, with respect to this controversy, the same position that Julius Meyer would have occupied if he had retained the ownership of the vacant lot.

The dispute between the parties in this cause has not arisen from any attempt on the part of either Meyer or Lobsenz to use the wall in question as a party wall, and by such use to obstruct the passage of light and air through the complainants' windows. The defendant Lobsenz claims the right to block up these windows with thin brick walls, erecting the same upon the window-sills without trespassing upon the land of the complainants. The complainants allege that Lobsenz has sought to compel them to pay him for the privilege of maintaining the windows. Lobsenz alleges that the tenants of the complainants have thrown articles out of the windows upon his lot, and have also trespassed upon the roof of his one-story building, causing the roof to leak, &c. These matters, however, seem to be of no importance. If the complainants are entitled to an easement of light and air, the defendant Lobsenz cannot be permitted to interfere with that easement by blocking up the windows for the purpose of protecting his property from trespass through the windows. *Bloom* v. *Koch, 63 N. J. Eq. (18 Dick.) 10 (1902).*

Excluding from consideration both the fact that this wall from its position and size appears to have been designed as a party wall, and the express covenant relating to the wall con-

tained in the deed, there can be no question that, under the settled law of New Jersey, the conveyance of this lot and building to the complainants created by implication an easement of light and air for the benefit of the existing windows. These windows plainly are "necessary" to the enjoyment of the upper stories of the building within the meaning defined, so far as such meaning has been defined, by the decisions of the courts of this state. *Sutphen* v. *Therkelson, 38 N. J. Eq. (11 Stew.) 318, 323 (1884)*; *Johnson* v. *Hahne, 61 N. J. Eq. (16 Dick.) 438, 441 (1901)*; *Toothe* v. *Bryce, 50 N. J. Eq. (5 Dick.) 589, 594 (1892)*.

It may be that the doctrine under which the easement of light and air is created by an implied grant or an implied reservation ought not to be extended. The rule which permits an implied reservation of this easement has been criticised by Vice-Chancellor Pitney (*Toothe* v. *Bryce, supra*), in which criticism Vice-Chancellor Stevens seems to concur. *Denman* v. *Mentz, 63 N. J. Eq. (18 Dick.) 613, 616, 617 (1902)*. To many minds, the rule prevailing in Massachusetts and in other states that in cases like the present one the easement of light and air can only be created by an express grant or an express reservation may seem more consistent with the American view of this easement and less liable to produce situations of hardship and injustice than the rule which prevails in New Jersey. See *Keats* v. *Hugo, 115 Mass. 204 (1874)*.

But the duty of this court, whatever may be the views of individual judges, is to fairly apply the established law of the state. That law, leaving out of view the party wall, gives the complainants the easement which they claim, and entitles the complainants to the remedy of an injunction to protect the enjoyment of their easement from the conduct of the defendant Lobsenz in blocking up their windows. The narrow question is whether the existence of the party wall under this express covenant in the deed makes the case an exception to the general rule so as to prevent the deed in which the covenant appears from creating the easement of light and air by implication by an implied grant.

There seem to be two ways in which an express covenant in a deed may have the effect to prevent the creation of an easement by an implied grant. One of these ways is exhibited where the express covenant and the implied grant relate directly to the same subject-matter. The rule to be applied in such cases is contained in the maxim *expressum facit cessare tacitum.* *Greer* v. *Van Meter,* 54 *N. J. Eq.* (9 *Dick.*) 270 (*1896*) ; *Bloom* v. *Koch, supra.* It is quite evident, I think, that the express covenant in this case does not relate directly to the reception of light and air through the complainants' windows. In making the covenant the minds of the parties were engaged in dealing with the status of the wall as an appurtenance to the existing building and as an appurtenance to a building which might thereafter be erected upon the adjacent lot. The covenant ignores the existence of the windows, and apparently is in the same form in which it would have been cast if no windows in fact had been in existence.

The other way in which an express covenant may operate to prevent the grant of an easement by implication is exhibited where the rights created by the express covenant are inconsistent with the enjoyment of the easement. The maxim *expressum facit cessare tacitum* also applies to this class of cases, but manifestly for a different reason from that which sustains its application to the class of cases first above mentioned. In *Denman* v. *Mentz,* 63 *N. J. Eq.* (18 *Dick.*) 613 (*1902*), an express covenant against encumbrances was held to prevent the creation of an easement of light and air for the benefit of the grantor's building by an implied reservation. A covenant on the part of the grantor that the granted land was free from all encumbrances was held to be inconsistent with an implied provision to be read into the instrument creating an encumbrance.

I do not find that the existence of this party wall and of the express covenant in relation to it contained in the deed is inconsistent with the establishment of an easement of light and air in some form. Let it be assumed that the covenant gives the defendant Lobsenz the right to close up all the windows, so as to make the entire wall solid at all points and equally capable

at every point of holding beams and performing the functions of a party wall. It is not necessary to decide that the correct construction of this covenant leads to any such result. The matter may all be left open so far as this case is concerned. The above assumption, however, establishes a condition which gives the argument against the existence of the easement in any form the greatest possible force. We may note, in passing, that the covenant was made with reference to an existing wall which in fact had windows, and that it is plainly possible to use the wall to a large extent as a party wall without entirely blocking up all these windows. It may be also that, owing to some other conditions which appear from the evidence, but which I have not described, the right of the defendant Lobsenz to use this wall as a party wall in the ordinary way is subjected to modification. I do not pause to consider these matters, because, upon the extreme supposition that under this covenant the defendant Lobsenz may at any time erect a building upon his lot and use the entire length and height of this wall as a party wall to sustain his beams and constitute one side of his building, placing his beams wherever he may see fit and rendering the wall at all points uniformly strong and thick, my conclusion is that if our New Jersey doctrine of easements of light and air by implied grant is fairly applied, it must be held that the complainants' building has at least a modified easement which only the actual use of this wall by the owner of the adjacent lot as a party wall can interfere with or destroy.

There seems to be no reason why an easement of light and air may not be created which shall be determinable upon the happening of some condition within the control of the parties to the instrument, by which, expressly or impliedly, the easement is created.

The easement in its ordinary form is liable to prove a somewhat uncertain and even transient form of property. In order to its continued enjoyment the windows to which it relates must be maintained without change of location. The value of the easement may depend upon the maintenance of a frail and ruinous building, or the ability of the owner of the dominant

tenement to replace such building with another having windows in the same places. *Johnson* v. *Hahne, supra; City National Bank* v. *Van Meter, 59 N. J. Eq. (14 Dick.) 32 (1899).* It may be observed, also, that even though the easement of light and air may not be acquired by prescription, the owners of buildings frequently open windows upon their neighbors' land in order to receive light and air through them to the same extent as if they had an easement, although they are well aware that at any time their windows are liable to be closed. The reception of light and air through windows may be of great practical value to the owner of a building, notwithstanding the fact that this light and air may be cut off at any time when the owner of the adjacent land may so elect.

There is no reason why an easement of light and air cannot be expressly granted so as to endure for the benefit of windows through a party wall until such party wall shall be applied to the use of an adjacent building. This, I think, is precisely what these contracting parties did. The implied grant of the easement of light and air is modified by the express covenant to the extent that the accomplishment of all the objects of the covenant—the enjoyment of all the rights created by it—imposes such modification. The complainants, I think, have a right to the enjoyment of this easement until the defendant Lobsenz, in the exercise of his right to use the wall as a party wall (whatever the extent of that right may be), shall necessarily modify or destroy the complainants' right.

Inasmuch as the defendant Lobsenz has threatened to wall up the complainants' windows, not for the purpose of any use of the wall by him as a party wall, but merely for the purpose of shutting off the complainants' light and air, and blocking up openings through which persons may go and objects may be discharged from the complainants' building onto his (Lobsenz's) premises, the complainants, I think, are entitled to an injunction. The decree will not attempt to construe this covenant so as to define the extent of the defendant Lobsenz's right to use the wall as a party wall, because this court in this case has no jurisdiction of that matter. The conduct of the defendant com-

plained of, which will be restrained by the injunction, has no possible relation to any right which he claims to use the wall as a party wall under the covenant.

3. Counsel for defendants urges that the defendant Julius Meyer is entitled to have the bill dismissed as to him, with costs, inasmuch as the charge of fraud, in respect of the covenant relating to the party wall contained in the deed from him to the complainants, has been disproved and abandoned. Julius Meyer, however, has defended this whole case jointly with the defendant Lobsenz, a single joint answer being filed. Moreover, it appears that Meyer conveyed the servient tenement to Lobsenz, and for all that appears he may have given a covenant against encumbrances. However that may be, Meyer has defended the whole case precisely as Lobsenz has defended it, and there are indications that he was interested in some way in defeating the complainants' claim, not only to a reformation of their deed, but to the remedy of an injunction. On the other hand, a large part of the expense of this cause has been caused by the false charge of fraud contained in the complainants' bill on which they founded their prayer that their deed from Meyer should be reformed. Under the circumstances, each party having partly succeeded, no costs will be allowed to either.